749 So.2d 739 (1999)
STATE of Louisiana
v.
Nathaniel LAMBERT.
No. 98-KA-0730.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
Rehearing Denied December 30, 1999.
*745 Justin H. Homes, Montgomery, Barnett, Brown, Read, Hammond & Mintz, L.L.P., New Orleans, LA, Counsel for Defendant-Appellant.
Harry F. Connick, District Attorney, Charles E.F. Heuer, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff-Appellee.
Court composed of Chief Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER, Judge ROBERT A. KATZ.
WALTZER, Judge.
Defendant Nathaniel Lambert was charged by grand jury indictment on 3 February 1997, with one count each of aggravated rape, La. R.S. 14:42; aggravated burglary, La. R.S. 14:60; and aggravated crime against nature, La. R.S. 14:89.1. Defendant pled not guilty at his arraignment on 18 February 1997. A twelve-person jury found defendant guilty as charged on all counts on 11 August 1997. On 15 August 1997, the trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence on the count of aggravated rape; fifteen years at hard labor on the count of aggravated crime against nature; and thirty years at hard labor on the count of aggravated burglary. The trial court then denied motions for new trial filed by both defendant and defense counsel. After the State filed a multiple bill, the trial court adjudicated defendant a fourth-felony habitual offender, vacated the original sentence on the aggravated burglary count, and resentenced defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The trial court denied defendant's motion to reconsider sentence.

STATEMENT OF FACTS:
New Orleans Police Officer Daniel Jewel testified that, at approximately 2:23 a.m. on 7 January 1997, he and Officer Richard Bonay responded to a report of an aggravated burglary at 2326 Louisiana Avenue. The victim, T.T., met the officers at the door. Officer Jewel said the victim was visibly upset but appeared "rather calm." She escorted the officers to the back of the residence where defendant was lying on a bed asleep, completely naked except for his shoes and socks. When the officers turned on the light, Officer Jewel noticed a hammer within defendant's reach, picked it up and moved it to the next room. Officer Jewel said they woke defendant, who appeared drunk or drugged. Officer Jewel asked defendant what he was doing; defendant responded that he was sleeping with his girlfriend. When asked where he was, he said he was in the "Hollygrove" area, which Officer Jewel said was on the other side of the Second Police District from the Louisiana Avenue residence. When asked for his girlfriend's name, defendant stated that it was "Dianne," which was not the victim's name. Defendant was ordered to put on his clothes and was handcuffed. Officer Jewel said at that point T.T. cowered in a corner and started to cry"freaking out," according him.
On cross-examination, Officer Jewel said he did not write anything down that the victim told him, as rape investigators handle all the reports in rape cases. He did testify that the victim told him defendant had entered the residence through the rear door and that he had observed that the rear door had been kicked in. Officer Jewel said that, based on his questioning of defendant and information from the victim, he concluded that defendant did not know the victim and did not belong there. He admitted that defendant did not resist arrest.
Dr. James Moises, who was qualified by stipulation as an expert in the field of *746 emergency medicine, testified that he reviewed medical records pertaining to a sexual examination of T.T. The history reflected that the victim reported that someone broke into her residence and assaulted her multiple times, vaginally and orally. Dr. Moises said the examining physician noted some redness and tenderness to the touch in the lower portion of her vaginal opening, which he said was consistent with the history given. Seminal fluid containing sperm was found in the vaginal area and the insides of the thighs, which Dr. Moises said was consistent with ejaculation outside of the vaginal area. On cross-examination, Dr. Moises agreed that, disregarding the history section, the examination was perfectly consistent with an examination of someone who had engaged in consensual sex.
Patricia Daniels, a medical technologist with the Orleans Parish Coroner's Office, was qualified by stipulation as an expert in the field of medical technology. Ms. Daniels identified a rape kit labeled with the police item number in the instant case. She said that tests performed on two internal and two external vaginal swabs, as well as an anal swab, were positive for seminal fluid; and she said internal and external vaginal smears were positive for spermatozoa. Oral swabs tested negative for the presence of seminal fluid, and oral and rectal smears were negative for the presence of spermatozoa. Ms. Daniels said the victim had type "0" blood, and she detected type "0" blood substance on secretor tests performed on the internal vaginal swab and the victim's saliva. On cross-examination, Ms. Daniels said that her test results show that sexual intercourse took place but that she could make no determination as to whether the intercourse was consensual.
Senior Police Dispatcher Addia Skipper, a supervisor in the New Orleans Police Department's Communication Division, testified that she was the custodian of records of complaint histories. Ms. Skipper identified an "incident" from the 911 call from the victim's residence which came in at 2:23 a.m. The caller stated that an unknown male armed with a hammer had broken in through her back door and raped her. The caller said that the person was sleeping naked in a bed, wearing tennis shoes, and that she was hiding in a closet.
T.T., who was twenty-seven years old, testified that on the night in question she had watched television and had taken an over-the-counter cold remedy to relieve a sinus problem. She went to sleep in her mother's bedroom at ten or eleven o'clock; her mother was at work. She was awakened by a crashing sound which came from the rear of the "shotgun"-style residence. She left the bed and ran toward the sound, encountering the defendant with a hammer in his hand. When she asked him what he was doing in her house, he responded that he was attempting to break into the liquor store next door. He asked if she had a screwdriver; and when she said she did not, he said, "Well, okay, b____. If you don't do exactly what I tell you, the next thing anybody [is] going to see when they come into this house is your brains splattered up against the wall." Defendant then ordered T.T. to take off her clothes, kneel down, and perform oral sex on him. Defendant took off his shorts and pointed the hammer at her head; she complied with his orders.
Defendant then asked her if anyone else was home and walked her to the front bedroom of the house, where he turned off the television. He took off all of his clothes, sat on the edge of the bed, and ordered her to perform oral sex on him. Defendant then lay down on the bed, grabbed the victim, laid her on top of him, and vaginally raped her. He attempted anal intercourse, and then continued to vaginally rape her, constantly demanding oral sex. He kept calling the victim a "b____" and berating women in general. The victim said that she feared for her life, as defendant kept the hammer either in his hand or near him on the bed. After *747 approximately two hours, defendant fell asleep with the victim on top of him. She carefully freed herself from his grasp, unplugged the telephone in that room, and took it into the rear bedroom where she dialed 911.[1] T.T. further testified that she did not consent to any sexual activity with defendant and that she had never met the defendant before he entered her home that night.
On cross-examination, the victim denied ever being "convicted for cocaine" and denied that she smoked crack cocaine. She denied having met defendant at 7:30 p.m. on the evening in question or asking him to repair her back door. She denied that someone named Trey, or Troy Johnson, broke down her door; she also denied that "Troy" stole food stamps from her because she owed him money for crack cocaine. T.T. denied meeting defendant before the night of the rape and denied ever encountering him as a crack dealer in her neighborhood. She denied borrowing a hammer from one Jill Cats; denied coming back to her residence to smoke marijuana; denied planning with the defendant a burglary of the nearby liquor store; denied having sex with the defendant in return for crack cocaine; and denied taking defendant's crack cocaine and money and then accusing him of rape to protect herself from him after his discovery of her theft.
The defendant testified on his own behalf and told a very different story than that told by T.T. Defendant testified that he was a forty-four year old merchant seaman. He said on the night in question he was living at the "Brown Sugar Laundromat" and that T.T., whom he met in December of 1996 and knew by the nickname of "Shorty," had asked him, whom she called "Bubblehead," to help fix her door. She told him someone named Trey, from whom she had obtained some crack cocaine, had pushed in her door, hit her, and taken her food stamps and some money. Defendant said he advised T.T. that Trey would hurt her and then asked if she had a hammer to fix the door. T.T. did not have a hammer, so she went to "Jill's" house to get one. He went to the store and purchased a beer, some iced tea, and a pack of "weed papers." The two entered T.T.'s residence, and she asked defendant if he had any crack cocaine. She said that fixing the door could wait, rolled some tobacco in a cigarette paper with the crack, and smoked it with defendant. Defendant said they were sitting on the bed, and the victim started performing oral sex on him. They then had intercourse.
Afterward, the victim asked for more cocaine. Defendant said similar events transpired for three or four hours. Defendant denied raping the victim, burglarizing her residence, or threatening her with a hammer. Defendant said he had approximately three hundred and sixty dollars and four hundred and forty dollars in crack cocaine on his person. Defendant said that around midnight he informed the victim that he was going to stay at a hotel, but that she told him he could spend the night at her house, as long as he "break her off." Defendant gave the victim two rocks of cocaine and twenty dollars in cash and went to sleep. He said the police eventually woke him up. Defendant said he told the police that the victim was a friend of his and denied her claim of rape. Defendant said a dark-haired officer told him that he did not think defendant would rape a woman and go to sleep. One officer said he would help defendant out if he told them who had the "guns around here." Defendant said he knew nothing about guns in the area. Defendant said he did not notice until he was being taken to Central Lockup that his cocaine and money were not in his pocket.
Defendant admitted to a 1979 armed robbery conviction; a 1983 aggravated battery conviction; a 1990 conviction for theft; and 1993 convictions for possession of cocaine *748 and carrying a concealed weapon as a convicted felon. Defendant clarified the fact that there was no "Brown Sugar Laundromat," but that "Brown Sugar" was a record store next to a laundromat. When defendant was asked whether he normally had sex with his shoes on, he answered, "It all depends where I'm at." He said T.T. routinely bought cocaine from him and other males in the neighborhood. Defendant said he smoked about three or four rocks of crack cocaine between 9:00 and 10:00 p.m. on the night in question.
On rebuttal the victim's mother, E.T., testified that her daughter works and is just a "home child," meaning that rarely leaves the house. She said she did not have any trouble with T.T. running the streets, going to barrooms, smoking or drinking; and she said had never heard her daughter called "Shorty." She claimed that she would kill T.T. if she found T.T. interacting with crack dealers or smoking crack cocaine. E.T. described herself as a health care professional who had been working sixty hours a week around the time of the rape, sometimes working double shifts. E.T. stated that since the rape she had cut her hours to twenty-four per week. E.T. said her daughter was always in contact with her at work, and she claimed to have "ways" of knowing what T.T. was doing even when she was at work. On re-direct examination, E.T. said the incident had ruined her whole family. She said that T.T. did not talk to her for two weeks after she came home from the hospital, and that T.T. had become withdrawn.
The State also called in rebuttal New Orleans Police Officer Richard Bonay, Jr., who had responded to the aggravated burglary call with Officer Jewel (who had blonde hair). Officer Bonay denied asking defendant where any guns were in the neighborhood and stating that he did not believe the incident was a rape. He said there was very little conversation, stating that they put defendant into the back of a police car by himself, while they stood on the porch.

ERRORS PATENT:
A review of the record reveals that the trial judge failed to rule on defendant's motion for a new trial until after he had sentenced defendant on the original sentences. "A motion for a new trial must be filed and disposed of before sentence." La.C.Cr.P. art. 853. The failure to rule on defendants motion for new trial prior to sentencing requires that the sentence be vacated and the case remanded for resentencing. State v. Anderson, 95-1252 p. 3 (La.App. 4 Cir. 7/31/96), 679 So.2d 181, 183. The trial court denied defendant's motions for new trial after imposing the original sentences. The court then adjudicated defendant a fourth-felony habitual offender, vacated the original sentence imposed on the aggravated burglary count, and resentenced defendant to life imprisonment at hard labor. Under these circumstances, the vacating of the original sentence cured the defect insofar as the sentence on the aggravated burglary conviction is concerned. State v. White, 621 So.2d 884, 889 (La.App. 4 Cir.1993), writ denied, 93-1557 (La.1/7/94), 631 So.2d 440. However, the sentences imposed on the aggravated rape and aggravated crime against nature convictions must be vacated, and the case must accordingly be remanded for resentencing. We find no other errors patent.

ASSIGNMENT OF ERROR NO. 1:
Turning to defendant's assignments of error, we first consider his claim that the record is incomplete because the transcripts of every pre-trial hearing, except one held on the morning of trial, are missing.
Article I, Sec. 19 of the Louisiana Constitution guarantees individuals judicial review based on a complete record and provides:
No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial *749 review based upon a complete record of all evidence upon which the judgment is based. This right may be intelligently waived. The cost of transcribing the record shall be paid as provided by law.
La.C.Cr.P. art. 843 provides:
In felony cases, and on motion of the court, the state, or the defendant in misdemeanor cases tried in a district, parish, or city court, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel.
As a corollary, La. R.S. 13:961(C) mandates that, "[i]n criminal cases tried in the judicial districts, the official court reporter shall record all portions of the proceedings required by law or the court, and shall, when required by law or the court, transcribe those portions required...."
In State v. Landry, 97-0499 (La.6/29/99), 751 So.2d 214, the Louisiana Supreme Court stated:
"Without a complete record from which a transcript for appeal may be prepared, a defendant's right to appeal is rendered meaningless."
* * *
[W]here a defendant's attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully recorded trial.
751 So.2d at 215-16 (quoting State v. Ford, 338 So.2d 107, 110 (La.1976)). The problem is particularly acute when, as in the instant case, appellate counsel was not also trial counsel. Id.
However, "[a] slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal would not [require a reversal of] defendant's conviction." State v. Allen, 95-1754 (La.9/5/96), 682 So.2d 713 (quoting Ford, supra). An incomplete record may still be adequate for appellate review. State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473. Accordingly, a defendant is not entitled to relief absent a showing of prejudice based on the missing portions of the transcripts. Id.
The record in the instant case lacks transcripts of motion hearings, but it includes a transcript of a motion hearing held on the morning of trial,[2] as well as one held on 21 March 1997. On the day of defendant's arraignment, 18 February 1997, defense counsel filed motions to suppress the evidence, confession and identification, and also for a preliminary hearing, speedy trial and for discovery and inspection, and an application for a bill of particulars. On 21 March 1997, defendant appeared with the same defense counsel who had filed the motions on 18 February 1997, and the State represented that: "[N]o motions lie in that particular case. There was no identification procedures [sic]. It is an indictment, so as far as probable cause is concerned, Judge...." The trial court then confirmed a previously set trial date of 28 April 1997. Defense counsel was present and did not raise any motions or question the State's representation that there were neither motions nor a need for a preliminary hearing due to the indictment. The only thing defense counsel requested at this hearing was a copy of the first page of the original handwritten police report, and the trial court ordered the prosecutor to turn it over. The prosecutor said she would give defense counsel everything, except for the supplemental report. The transcript reflects that immediately thereafter the trial court adjourned for the *750 day, and the last transcription reflected defense counsel's addressing of the prosecutor, stating that he would get the police report from her.
There was no out-of-court identification procedure in this case, so there was no basis for a motion to suppress the identification. Defendant was not entitled to a preliminary examination as a matter of right because he was indicted by a grand jury. La.C.Cr.P. art. 292; State v. Johnson, 619 So.2d 1102, 1111 (La.App. 4 Cir.1993), writ denied, 625 So.2d 173 (La. 1993). And, when a grand jury indictment has been returned, a discretionary preliminary examination is limited to the perpetuation of testimony and the fixing of bail. La.C.Cr.P. art. 296. The record reflects that bail was set for defendant on 7 January 1997, and there is no indication that it was necessary to perpetuate anyone's testimony. Thus, defendant was not prejudiced by not having a preliminary examination.
As to the bill of particulars, in State v. Hudnall, 522 So.2d 616 (La.App. 4 Cir.1988), writ denied, 530 So.2d 83 (La. 1988), this court stated:
Under La. Const. Art. I, Sec. 13 the accused shall be informed of the nature and cause of the accusation against him. La.C.Cr.P. Art. 484 provides for a bill of particulars to inform the defendant of the nature and scope of the offense charged. The defendant should know the scope of the criminal activity so that he can properly defend against the charges. State v. Rogers, 375 So.2d 1304 (La.1979). There is no formula regarding the information the State must make available. The extent to which particulars are granted depends on the nature and complexity of the case. State v. Miller, 319 So.2d 339 (La.1975). The court has wide discretion to determine the sufficiency of the State's answers. Reversible error occurs when there is a failure to provide information on the cause of the accusation. State v. Atkins, 360 So.2d 1341 (La.1978), cert. denied, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).
522 So.2d at 619.
The record in the instant case does not contain an answer to defendant's motion for a bill of particulars. However, neither does it contain an objection by defendant as to any failure to respond by the State. There would have been no need for a hearing relating to the motion for a bill of particulars absent action by the defendant. Because defendant did not raise any issue concerning the failure of the State to answer his motion, or the inadequacy of any such response, there apparently was no such hearing. Defendant knew the specifics of the charges; the time, date and place of occurrence; and his accuser's name. Even assuming there was a hearing and the transcript of it is missing from the record, defendant has suggested no resulting prejudice.
Although evidence was seized from defendant and defendant made several statements to the arresting officers, defense counsel apparently failed to pursue these two motionsor any of the aforementioned motionsafter the 21 March 1997, court appearance when the prosecutor told the court that no motions were pending. The trial court relied on that representationand defense counsel's assent by silence, if motions actually were pendingand confirmed the 28 April 1997, trial date. This fact, and the absence of minute entries in the record relating to later hearings, establishes that there are no missing transcripts related to these hearings.
There were four other written motions filed by defendant on 28 May 1997. The first was a pro se "Motion To Declare The Relevant Provisions Of La. Code Of Evidence Art. 412 Unconstitutional As It Relates To This Particular Case." This motion was the subject of the hearing held the morning of trial. At that "hearing," the trial court indicated that it had *751 researched the issue and then recessed to discuss the law. While there is no transcript of what discussion transpired during that recess, defendant is not arguing the merits of the trial court's ruling in this assignment of error; and the understanding of the law by defense counsel, prosecutor and/or the trial court would have no bearing on our review of the trial court's ruling. Following recess, the trial court heard brief testimony from several inmates who wished to testify on defendant's behalf as to the victim's sexual history, her past drug usage, or her past in general. The trial court denied defendant's motion, finding the witnesses' testimony irrelevant and implicitly finding that La. C.E. art. 412 was constitutional as barring their testimony.
Defense counsel also filed on 28 May 1997, a "Motion To Obtain Jury Information From the State, Or Alternatively, to Bar the State From Using Such Information." On that date, the minute entry shows that the State "noted that it is not using prohibited jury information." Accordingly, defendant's motion was essentially rendered moot. The trial court apparently believed the motion moot, and set a hearing on defendant's motion regarding evidence of the victim's past sexual behavior as governed by La. C.E. art. 412, as well as the third motion filed on that date, a motion in limine regarding the State's use of defendant's previous convictions. Thus, the minute entry reflects that no "hearing" was ever held as to this motion. In addition, the court reporter certified that she could find no stenographic notes or tapes from that date and stated that there appeared to have been no testimonial evidence taken on that date. Defendant has failed to show that there is a missing transcript from a hearing held on this date as to this motion.
The third motion filed on 28 May 1997 was a pro se "Motion In Limine" to bar the State from questioning defendant concerning his "last" two convictions, as they were unconstitutional. There is no indication that a hearing was ever heard on this motion or a ruling pronounced thereon. However, the fact that the State was allowed to ask questions regarding these two convictions is evidence that, even assuming there was a hearing on this issue, the trial court ruled in favor of the State. Further assuming that the transcript of such hearing is missing, defendant has suffered no prejudice. Defendant pleaded guilty in 1993, in two separate cases, to possession of cocaine and possession of a concealed weapon by a convicted felon. The record reflects that in each case defendant was represented by counsel, and that defendant was fully advised of his rightsincluding his right to trial by judge or jury; his right to confront and cross examine the witnesses against him; and his privilege against self-incriminationin connection with his plea. These two convictions were the two most recent ones listed in the habitual offender bill of information filed by the State, and the two most recent convictions referred to by the prosecutor in her cross-examination of defendant.
The fourth motion filed on 28 May 28, was a pro se "Motion To Obtain `Rap' Sheets And Previous Verdict Information On Prospective Jurors With Authority In Support Thereof." Defendant asserts on appeal that a minute entry in the record he does not specify which oneindicates that a hearing on this motion was conducted but that there is no transcript of any related hearing in the record. Contrary to defense counsel's assertion, the record does not contain a minute entry indicating that a hearing was held on this motion. More importantly, there is no jurisprudence holding that a defendant is entitled to the "rap" sheets of prospective jurors or any previous verdict information.
Defendant also claims that the record is incomplete because the index indicates that there is a witness work sheet at page 149 of the record, when the record contains no such a page number. However, *752 the State's witness work sheet is contained in the record at page 148, with a blank space at the end of the list for one more witness, indicating that no more witnesses were listed by the State. All of the witnesses who testified for the State were listed on its witness work sheet, except for Dr. James Moiseswho testified without objection, apparently in place of the listed emergency room physicianand Addia Skipper, the police communications supervisor who testified without objection to the 911 call placed by the victim. Defendant submitted a handwritten sheet of paper contained in the record as page 147, which purportedly lists "The Names of The people whom has had Sex with [the victim] for Crack Cocaine." Other than the inmates who testified at the hearing on the day of trial, defendant was the only witness who testified on his behalf. There does not appear to be a missing witness work sheet; if there is, defendant has failed to show how its absence has prejudiced him.
Defendant asserts that the record does not contain a transcript of the jury voir dire. The trial transcript reflects that no objections were made during voir dire. A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection to the error. La.C.Cr.P. art. 841(A); State v. Seals, 95-0305 p. 5 (La.11/25/96), 684 So.2d 368, 373, cert. denied sub nom Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). Therefore, whether or not the transcript of the voir dire is contained in the record is irrelevant. See also State v. Ford, 92-2029 (La.App. 4 Cir. 1/31/95), 650 So.2d 808; State v. Hawkins, 90-1235 (La.App. 4 Cir. 9/15/95), 667 So.2d 1070, affirmed, 96-0766 (La.1/14/97, 688 So.2d 473) (no relief for absence of voir dire transcript from record where minute entries show no objections).
Defendant asserts in his brief that there were hearings held on 28 May 28 1997, 18 June 1997, and 8 July 1997, for which no transcripts are available. The record does not support this assertion. All of the motions filed by defendant have been accounted for, and/or defendant has shown no prejudice from any missing transcripts relating to those motions. With regard to the date of 28 May 1997, this issue has been addressed above regarding defendant's motion to obtain jury information from the State.
With regard to the date of 18 June 1997, the minute entry for that date reflects that defendant appeared for a hearing on motions and for a preliminary examination. However, the minute entry specifically states that the defense moved the court for a continuance because defense witnesses had not been served. The minute entry notes that the defense witnesses were listed on a handwritten legal sized piece of paperwhich apparently refers to the list at page 147 of the record. The "motions" referred to in this minute entry are apparently the State's motion in limine regarding evidence pertaining to the victim's prior sexual history and defendant's motion relating to La. C.E. art. 412. This conclusion is supported by the stated need to notify the defense witnesses listed on defendant's witness list of persons who had evidence that the victim allegedly engaged in sexual activities in exchange for crack cocaine.
With regard to the date of 8 July 1997, there is neither a docket master entry nor a minute entry for that date. On 7 July 1997, the docket master shows that defendant appeared for a hearing on the aforementioned motions and for preliminary examination; but a joint continuance was granted, and the matter was reset for 8 July. The next docket master entry is dated 9 July 1997, and states that no court was held that date. The next docket master entry is 11 August 1997, the first date of trial. On that date the hearing was held prior to trial on defendant's motion relating to La. C.E. art. 412. The court reporter certified that she could find no stenographic notes or tapes from 8 July 1997, and she purportedly attached a copy of the minute entry for that date to her certification. *753 The record contains no such minute entry. It is obvious that the court reporter mistakenly referred to the minute entry for 7 July 1997, when the hearing was continued. The only outstanding motion was the one relating to the victim's past sexual history, which was heard on the morning of trial. Thus, although set for 8 July 1997, it was not heard on that date. There was no court appearance on 8 July 1997.
Because defendant has demonstrated no prejudice resulting from the absence in the record of transcripts that presumably existed at one time, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
By this assignment of error, defendant claims that the trial court erred in giving an erroneous jury instruction. However, the record reflects that, after the jury instructions were given, the trial court held a bench conference to allow the parties to lodge any objections to the jury instructions and/or to request additional instructions. Defendant did not note any objections.
The failure to object to the charge before the jury retires or within such time as the court may reasonably cure the alleged error precludes review of the alleged error that the trial court gave an erroneous reasonable doubt instruction such as the one in the instant case. State v. Davis, 97-1827 p. 3 (La.App. 4 Cir. 3/10/99), 732 So.2d 79, 81 (citing La.C.Cr.P. art. 801 and State v. Bush, 91-0150 (La. App. 4 Cir. 3/15/94), 634 So.2d 79); see also State v. Howard, 98-0064 p. 16 (La.4/23/99), 751 So.2d 783, 802 (no "plain error" rule regarding jury instructions; there must be a contemporaneous objection).
Moreover, a review of the reasonable doubt instruction in the instant case shows that it was not unconstitutional. The trial court's reasonable doubt instruction was as follows:
If you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even where the evidence demonstrates a probability of guilt, yet if it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a reasonable one, that is, one founded upon a real, tangible, substantial basis, and not upon mere caprice, fancy, or conjecture. It must be such a doubt as would give rise to an uncertainty, raised in your minds by reason of the unsatisfactory character of the evidence; one that would make you feel that you had not an abiding conviction to a moral certainty of the defendant's guilt. If, after giving a fair and impartial consideration to all of the facts in the case, you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, it is your obligation to find the defendants [sic] not guilty.
The prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt, but the rule does not go further and require a preponderance of testimony. It is incumbent upon the State to prove the offense charged, or legally included in the Information, to your satisfaction and beyond a reasonable doubt. A reasonable doubt is not a mere possible doubt. It should be an actual doubt. It is such a doubt as a reasonable man would seriously entertain. It is a serious doubt, for which you could give a good reason.
In Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the U.S. Supreme Court held that a particular reasonable doubt instruction could have been improperly interpreted by a reasonable juror as allowing a finding of guilt based on a degree of proof below that required by the Due Process Clause. The Cage instruction informed the jurors that the doubt "must be such a doubt as would give *754 rise to a grave uncertainty ...," that such a doubt "is an actual substantial doubt," and that what was required was "a moral certainty." 498 U.S. at 40, 111 S.Ct. at 329. The instruction in the instant case did not state that the doubt must be one giving rise to a "grave uncertainty"; it did not use that term at all. Nor did the instruction refer to the term "substantial doubt," although it did use the term "substantial basis." Also, while the instruction in the instant case employed the term "moral certainty," it was not used in the same manner as it was used in Cage.
This distinction between the use of the term "moral certainty" in the Cage instruction and that term as it was used in the instant case was recognized by the U.S. Supreme Court in Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In Victor, the reasonable doubt instruction employed the term "moral certainty" in a similar context as in the instant case.[3] The court in Victor concluded that the instruction, taken as a whole, correctly conveyed the concept of reasonable doubt to the jury. 511 U.S. at 22, 114 S.Ct. at 1251. The Victor court reiterated that the proper standard for reviewing a jury instruction is whether or not there is a reasonable likelihood that the jury applied the instruction in an unconstitutional manner. 511 U.S. at 6, 114 S.Ct. at 1243.
In State v. Smith, 91-0749 (La.5/23/94), 637 So.2d 398, cert. denied sub nom Smith v. Louisiana, 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994), the Louisiana Supreme Court adopted the Victor standard, and found constitutional a reasonable doubt instruction similar to the one in the instant case, employing the terms "moral certainty" and "substantial basis" in the identical context present in the instant case, but also employing the terms found objectionable in Cage "grave uncertainty" and "substantial doubt"which were not used in the instant case.
Considering the holding in Smith, the trial court's reasonable doubt instruction in the instant case is not constitutionally deficient. There is no reasonable likelihood that that the jury applied the reasonable doubt instruction in an unconstitutional manner.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3:
By this assignment of error, defendant claims that the trial court erred in allowing victim impact testimony by E.T., the victim's mother.
During the redirect examination of E.T., the following colloquy occurred:
BY MS HERMAN:
Q You have said that things have changed since this incident took place?
A It has.
Q All right.
A Drastically.
Q Tell the jury how.
A It has ruined my whole family. My ex-husband
BY MR. MILLER:
I am going to object. This was not subject to cross examination. This is beyond the scope of redirect.
BY MS. HERMAN:
Judge, he opened the door.
BY THE COURT:
I think you opened the door, sir, by asking the questionsI don't want to put it on the record. I'll put it off the record if you would like to come up here to the bench.
BY MR. MILLER:
Just please note my objection.
BY THE COURT:

*755 Your objection is noted for the record.
BY MS. HERMAN:
Q Tell the jury what has changed.
A She's withdrawn.
When this thing first happened, my baby didn't talk to me for two solid weeks. When she came home from the hospital, all she would do was draw up in the corner
BY THE COURT:
Okay.
Ms. Herman, I am going to have to cut this off.
BY MS. HERMAN:
Yes, Judge.
BY THE WITNESS:
And, even now
BY THE COURT:
We have to cut this off.
BY THE WITNESS:
He has ruined my children, my sons, my daughters, her daddy.
Defendant claims this evidence was irrelevant and highly prejudicial. La. C.E. art. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, even if the evidence is relevant, it can be excluded under La. C.E. art. 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." A trial judge is vested with great discretion in determining the relevance of evidence, and his ruling will not be disturbed in the absence of a clear abuse of discretion. State v. Miles, 402 So.2d 644, 647 (La.1981).
Defendant incorrectly characterizes the testimony by the victim's mother as "victim impact" evidence, which is a term of art used to describe evidence of the character of a homicide victim and the effect of the death on his or her family. Such evidence is relevant and admissible at the penalty phase of a capital trial in order to permit the jury to assess meaningfully defendant's moral culpability and blameworthiness. State v. Bernard, 608 So.2d 966 (La.1992). However, victim impact evidence generally is not used to prove essential elements of a crime. State v. Williams, 96-1023 p. 24 (La.1/21/98), 708 So.2d 703, 722, cert. denied sub nom Williams v. Louisiana, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79.
The only complete statement given by T.T.'s mother before the trial court stopped the line of questioning, or attempted to do so, was the statement about the change in T.T. since the incident. This testimony was relevant to rebut defendant's testimony that T.T. consented to intercourse. Testimony that T.T. did not talk to her mother for two weeks after the incident, and that T.T. would "draw up" in a corner, tended to show that T.T. did not consent to intercourse with the defendant. Because this evidence was relevant, we cannot say that the trial judge clearly abused his discretion in failing to rule that its probative value was substantially outweighed by its possible prejudicial effect.[4]
Despite attempts by the trial court to stop her, the victim's mother went on to state that the incident had ruined her children, her sons, her daughters, and the victim's father. This statement was irrelevant to the question of defendant's guilt or innocence. Because the trial court attempted to stop the testimony, however, it cannot be said that the trial court erred in "admitting" the statement. While the trial court did not admonish the jury to disregard this statement, defense counsel did not request that an admonishment be given. Moreover, considering the evidence as *756 a whole and especially the jury's rejection of defendant's testimony, we believe that the verdict rendered in this case was surely unattributable to this statement. State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. denied sub nom Taylor v. Louisiana, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4:
By this assignment of error, defendant claims that the trial court erred in failing to address two of his pretrial motions: his motion to suppress the inculpatory statement and his motion to declare La. C.E. art. 412 unconstitutional.[5]

The Motion to Suppress
In this claim, defendant alleges that the trial court erred in failing to address his motion to suppress the statements; that the State failed to establish that the statements were given freely and voluntarily and after defendant had been advised of his Miranda rights as required by La.C.Cr.P. art. 703 and La. R.S. 15:451; that the State failed to advise defendant in writing of its intent to use the statements at trial as required by La.C.Cr.P. art. 768; and that the State referred to them in its opening statement, even though they had not been ruled admissible.
Officer Jewel testified that, when police were ascertaining the nature of the complaint, they asked defendant what he was doing, and he said he was sleeping with his girlfriend, whom he erroneously called "Dianne." Asked where he was, defendant erroneously answered that he was in the "Hollygrove" section of the city. Following this colloquy with the officers, defendant was ordered to get dressed and was handcuffed. There was no evidence presented by the State as to any further statements by defendant.
As previously discussed, defendant effectively waived his right to a hearing on his motion to suppress. Defendant filed a motion to suppress the statement on 18 February 1997. On 21 March 1997, when the case was called for hearing on the motions, the State represented that no motions were pending. Defense counsel assented to this statement by his silence, and the trial court moved on with the case. There is no indication that defendant ever raised the motion to suppress the statements again. Accordingly, defendant abandoned his motion to suppress the statement. There was no error by the trial court in failing to conduct a hearing on the motion to suppress under these circumstances, and the State was under no duty to ensure that defendant's motion was heard.
Moreover, defendant's statements were admissible and would not have been suppressed. There is no evidence that Miranda warnings were given to defendant prior to his making the statements. According to a police report contained in the record, the warnings were given to defendant after he was advised that he was under arrest. The general rule, however, is that Miranda warnings are not required until a citizen is deprived of his liberty in a significant way, e.g. when he is forbidden to leave the officers' presence. State v. Nguyen, 97-0020 p. 3 (La.App. 4 Cir. 1/14/98), 707 So.2d 66, 67, writ not considered, 98-0441 (La.3/27/98), 716 So.2d 879.
In Nguyen, this court set out the following factors to aid in determining whether there was a significant detention:
(1) whether the police officer had reasonable cause under C.Cr.P. art. 213(3) to arrest the interrogee without a warrant; (2) the focus of the investigation on the interrogee; (3) the intent of the police officer, determined subjectively; (4) the belief of the interrogee that he *757 was being detained, determined objectively.
707 So.2d at 67 (citing State v. Thompson, 399 So.2d 1161, 1165 (La.1981)). The Nguyen court further set forth four similar factors to aid in determining the necessity for Miranda warnings:
(1) whether, prior to interrogation, probable cause existed to arrest the accused; (2) statements or actions by the police indicating an intention to hold or restrain him; (3) statements or actions by the accused indicating his reasonable belief that he is in custody and (4) the extent to which the investigation had focused on the accused.
707 So.2d at 67.
Officer Jewel testified that when police arrived on the scene the victim, while visibly upset, appeared calm. The victim escorted the officers to the back and simply stated, "He's in here." Officer Jewel said the officers awoke defendant and asked him what he was doing, stating, "we really didn't know what was happening." As Officer Jewel explained, "I mean, we get calls sometimes, and it just might be a domestic dispute, you know. They might be boyfriend and girlfriend." In other words, the officers did not know what they were faced with upon encountering defendant; it is doubtful that they had probable cause to arrest defendant at that time. While defendant was the focus of their investigation, the officers did not intend at that time to effect an extended restraint of defendant's liberty. Although defendant awoke, naked, to see two police officers in the bedroom, there is no evidence that the officers had drawn their guns or batons or that they were doing anything other than standing there. Accordingly, defendant was not being detained; and there was no need to advise him of his Miranda rights at that time.
Our analysis does not end with the dispensability of Miranda warnings under the circumstances, however. As a matter of due process, before the State may introduce an inculpatory statement into evidence, it must prove that the statement was free and voluntary and not, by contrast, a product of fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451; State in Interest of J.M., 99-1271 (La.App. 4 Cir. 6/30/99), 743 So.2d 228. A court must look to the totality of the circumstances surrounding the making of the statement to determine its voluntariness. State v. Lavalais, 95-0320 p. 6 (La.11/25/96), 685 So.2d 1048, 1053, cert. denied sub nom Lavalais v. Louisiana, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997). The testimony of police officers alone can be sufficient to prove the defendant's statements were freely and voluntarily given. State v. Jones, 97-2217 (La.App.2/24/99), 731 So.2d 389, 398.
Officer Jewel's testimony was sufficient to establish that the statements given by defendant were answers to a few basic questions intended to help the officers understand the nature of the incident. The officer's testimony further demonstrated that defendant made the statements freely and voluntarily. Thus, the statements were admissible.
Although as a matter of substantive law the statements were admissible, La.C.Cr.P. art. 768 requires that, unless the defendant has been given pretrial discovery, the State shall advise the defendant in writing of its intent to introduce an inculpatory statement at trial. If the State fails to do so, the inculpatory statement shall not be admissible. In the instant case, there is no evidence that defendant learned of the existence of the statements during pretrial discovery, as there is no indication in the record that the State filed answers to defendant's motion for a bill of particulars. However, the record does contain a notice by the State of its intent to use statements given by defendant. Defendant claims, though, that there is no proof that he was served such notice; but even assuming that no notice was given, defense counsel failed to *758 object to Officer Jewel's testimony regarding the statements. Accordingly, defendant is barred from raising the issue of lack of notice on appeal. La.C.Cr.P. art. 841(A); State v. Zeno, 322 So.2d 136 (La. 1975).
Defendant claims the State impermissibly referred to defendant's statements during its opening statement because the record does not show that the statements had been previously ruled admissible as required by La.C.Cr.P. art. 767. Again, however, because defendant failed to object when the State referred to the statements, defendant is barred from raising the issue on appeal. La.C.Cr.P. art. 841(A); State v. Seals, supra.

The Motion Challenging the Constitutionality of La. C.E. art. 412
Defendant claims the trial court failed to address defendant's pro se motion to declare La. C.E. art. 412the "rape shield" provisionunconstitutional. In connection with this motion, defendant sought to present the testimony of six witnesses, all of whom were prison inmates. Following a hearing, the trial court ruled that these witnesses would not be allowed to testify, implicitly finding that La. C.E. art. 412 was constitutional insofar as it required the exclusion of the witnesses' testimony concerning the victim's past sexual behavior. Accordingly, the trial court implicitly ruled on defendant's motion; we find no procedural error. We will address the substance of the ruling in Assignment of Error No. 6, below.
There is no merit to either claim presented in this assignment of error.

ASSIGNMENT OF ERROR NO. 5:
By this assignment of error, defendant contends that the trial court erred in failing to prohibit prejudicial testimony elicited by the State in a timely fashion.
Defendant claims that the trial court erred in allowing the State to present testimony by Dr. James Moises and medical technician Patsy Daniels and that their testimony was highly prejudicial. Dr. Moises was qualified by stipulation as an expert in the field of emergency medicine and testified without objection as to the results of the physical examination of the victim. Ms. Daniels was qualified by stipulation as an expert in the field of medical technology and testified without objection as to the findings of tests she performed on swabs, smears and blood samples taken from the victim and/or defendant. Defense counsel failed to object timely to the testimony of either witness. Therefore, defendant is precluded from raising the issue on appeal. La.C.Cr.P. art. 841(A); State v. Seals, supra.
Moreover, there is no merit to defendant's argument. Defendant asserts that the testimony of these two witnesses should have been inadmissible because they "were not fact eye-witnesses," and neither was able to testify whether the victim "engaged in sexual intercourse without her consent." Presumably, defendant is averring that their testimony was therefore irrelevant.[6] As previously noted, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. Dr. Moises' testimony established at the very least that there was semen and spermatozoa on the victim's outer vagina and thighs, tending to show that she had recent sexual contacta fact which of consequence in the case. Ms. Daniels' testimony established that swabs and smears taken during the victim's physical examination performed shortly after *759 the offense showed semen and/or spermatozoa, indicating recent sexual activity again, a fact of consequence.
While defendant argues that there was no dispute that he had sexual relations with the victim on the night in question, the record does not contain a stipulation by defendant to that effect. Therefore, the State properly presented its case before defendant testified and admitted to engaging in sexual relations with the victim.
Also contained in this assignment of error is a claim that the introduction of "the clothing" was highly prejudicial, citing La. C.E. arts. 401 and 403. Again, defense counsel did not object to the introduction of "the clothing" and is therefore precluded from raising this issue on appeal. Moreover, there was no error in admitting the clothing taken from defendant after his arrest, which was the only clothing admitted into evidence. This was the clothing allegedly worn by defendant during the perpetration of the crime that night. Officer Jewel identified the clothing, and it generally supported his testimony. Since Officer Jewel's
credibility was of consequence to the determination of the action, the evidence was relevant; and we find no abuse of discretion in the trial court's failure to rule that the probative value of defendant's clothing was substantially outweighed by any of the dangers listed in La. C.E. art. 403.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6:
By this assignment of error, defendant claims the trial court erred in finding that La. C.E. art. 412 was not unconstitutional insofar as it barred certain defense witnesses from testifying as to the victim's prior sexual behavior.
La. C.E. 412 provides in pertinent part:
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
Defendant states in his brief that "numerous" witnesses were prepared to testify on his behalf that the victim had a history of engaging in sexual intercourse in exchange for crack cocaine. Of the six witnesses who were prepared to testify on defendant's behalf, only three indicated that they would have testified as to any prior sexual behavior of the victim. Neither of these three witnesses specifically stated that they would testify as to the exchange of sex for cocaine; nevertheless, the defendant maintains they would have so testified. In any event, this court has previously held that evidence of a rape victim's alleged practice of exchanging sex for drugs is prohibited by La. C.E. art. 412(B), as it does not fall within one of the two exceptions delineated in art. 412(B)(1) and (2). State v. Anderson, 97-2587 p. 9 (La.App.11/18/98), 728 So.2d 14, 20. However, we did not address the constitutional aspect of the defendant's claim in that case.
*760 The incident in question occurred on 7 January 1997; and the trial and hearing with regard to the inmate witnesses occurred on 11 August 1997. One of the witnesses, Donnell Banister, testified that he had been incarcerated for two years, since August of 1995, and had known the victim for three years. He admitted that he had no personal knowledge of the victim's activities in the two years prior to the date of the hearing. Seth Smith testified that he also had been incarcerated since 1995. Cedric Anderson testified that he had been incarcerated since May of 1996. The trial court found that the testimony of all of these individuals would be irrelevant.
The Louisiana Supreme Court has recognized that restricting a defendant's right to introduce testimony as to the victim's prior sexual history may violate the defendant's right to confrontation and fair trial. State v. Vaughn, 448 So.2d 1260 (La.1983); see also La. C.E. art. 412, comment (b). In Vaughn, the court considered the "rape shield" provision contained in now repealed La. R.S. 15:498, the predecessor to La. C.E. art. 412. The court stated:
[R]ules such as R.S. 15:498 which exclude certain types of evidence "cannot be mechanistically applied to deny admission of highly reliable and relevant evidence critical to an accused's defense." See Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Clearly, where highly relevant evidence is available, the State's need to protect the victim from embarrassing cross-examination must be weighed against the probative value of the evidence to determine whether the right of confrontation is being infringed.[7]
However, where the evidence sought to be admitted is not relevant, the right to confrontation is not affected and there is no need to impose a balancing test. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. La. R.S. 15:441.
We conclude that evidence of a single instance of sexual intercourse between the victim and another individual 5 days prior to the rape is not relevant to a determination of whether the act with defendant was consensual. The fact that the victim consented to intercourse with another man is not probative of her subsequent conduct with defendant. Rather, were the evidence to be admitted, the victim would be confronted with the accusations of her own chastity, which cannot be shown to have any relation to the crime of rape.
In holding that the single instance of conduct in this case was not relevant to a determination of whether a rape occurred, we do not hold that a victim's prior sexual history may never be relevant and subject to cross-examination. Nevertheless, before such evidence may be held admissible, the defendant must clearly demonstrate that the evidence of prior sexual conduct is genuinely probative of the issue of consent, rather than a reflection of the victim's promiscuity.
448 So.2d at 1267-1268.
In State v. Everidge, 96-2665 (La.12/2/97), 702 So.2d 680, the Louisiana Supreme Court addressed the issue of balancing a defendant's constitutional right to present a defense against the victim's interests under the "rape shield" law, stating:
A defendant's right to present a defense is sanctioned constitutionally and he can testify to or give evidence on any matter relevant to an issue material in the case. State v. Short, 94-0233 (La. App. 4th Cir.5/16/95), 655 So.2d 790, 793; State v. Trosclair, 584 So.2d 270, 275 (La.App. 1st Cir.1991), writ denied, 585 *761 So.2d 575 (La.1991). The right of an accused rapist to present a defense is balanced against the victim's interests under the rape shield statute, which is meant to protect the victim of rape from having her sexual history made public. State v. Vaughn, 448 So.2d 1260, 1262 (La.1983). The rape shield law is precisely drawn to exclude evidence of an alleged rape victim's sexual history with persons other that the defendant. State v. Zierhut, 93-673 (La.App. 5th Cir. 2/9/94), 631 So.2d 1378, 1381, writ denied, 94-0607 (La.6/3/94), 637 So.2d 500. Article 412 does not proscribe a defendant's right to claim the defense of consent and put forth evidence to support his defense.
702 So.2d at 684 (emphasis added).
The trial court found that the testimony of the three men would be irrelevant, presumably considering the remoteness in time to the offense. One of the inmate witnesses could not have had any contact with the victim for at least one and one half years prior to the date of the offense defendant is charged with; the second, for at least one year prior to the date of the offense; and the third, for at least seven months prior to the date of the offense. Evidence that the victim had sexual relations with these persons in exchange for cocaine at remote time periods is no different than evidence that the victim had sexual relations with the same men at the same times in the past simply because she is promiscuous. Under La. C.E. art. 412(B), the motivation for her alleged promiscuity is irrelevant.
Moreover, while the victim denied ever using cocaine, the proffered testimony was not intended solely to impeach her credibility. Rather, it was intended to attack her characteran attack that strikes at the very center of the rape shield. Art. 412 "is primarily intended to protect the victim from improper character attacks by the accused." La. C.E. art. 412, comment (g). Under these circumstances, it cannot be said that La. C.E. art. 412 is being "mechanistically applied to deny admission of highly reliable and relevant evidence critical to an accused's defense." Davis v. Alaska, supra. The evidence is neither highly reliable nor, considering the remoteness in time, so relevant that the dangers listed in La. C.E. art. 403 may be ignored. We hold that the proffered testimony would not have addressed the issue of consent so much as it would have the "issue" of the victim's alleged past sexual practices and that, accordingly, La. C.E. art. 412 is not unconstitutional as applied to these circumstances. Defendant had the full and fair opportunity to present the defense that his intercourse with T.T. was consensual, both in his own testimony and in his cross-examination of the State's witnesses. We find no violation of his rights on this point.
Defendant also attacks the trial court's ruling in refusing to allow three other inmate witnesses to impeach the victim with evidence of a non-sexual nature. John Williams stated that he would testify to "[the victim's] characterher credibility." Williams had been incarcerated for three years at the time of the hearing and trial. He did not state how he would testify about the victim's character, although he said he knew her. La. C.E. art. 608 provides in pertinent part:
A. Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of general reputation only, but subject to these limitations:
(1) The evidence may refer only to character for truthfulness or untruthfulness.
(2) A foundation must first be established that the character witness is familiar with the reputation of the witness whose credibility is in issue. The character witness shall not express his personal opinion as to the character of the witness whose credibility is in issue.

*762 (3) Inquiry into specific acts on direct examination while qualifying the character witness or otherwise is prohibited.
B. Particular acts, vices, or courses of conduct. Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required.
While Williams said he knew the victim, he did not say that he was familiar with her reputation for truthfulness or untruthfulness. Accordingly, his testimony was not admissible under La. C.E. art. 608. Williams said nothing about having known that the victim used cocaine or other drugs or that he would have testified as to her credibility on any ground other than her reputation for truthfulness or untruthfulness. Under these circumstances, the trial court properly ruled that his testimony was inadmissible.
Inmate witness Kenny Johnson testified that he knew the victim and knew she used drugs. He had been incarcerated at the time of the 11 August 1997 hearing and trial for twenty months, meaning that he could have only had personal knowledge of drug usage by the victim at a point in time thirteen months or more prior to the date of the crimes with which defendant was charged.
La. C.E. art. 607(D) provides that the credibility of a witness may be attacked by extrinsic evidence contradicting the witness's testimony, "unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice."
During cross-examination, the victim denied ever having been arrested "for cocaine." Defense counsel then asked, "Yet, you do smoke crack, don't you?". The victim replied that she did not. The victim later denied having had crack dealings with defendant; smoking crack with defendant on the night in question; or having sex with defendant that night in exchange for crack. Johnson did not state that he knew that the victim had encountered the defendant before the date of the offenses, such as in the course of any cocaine deals. The victim did not deny ever using crack cocaine, only that she did not (presently) use cocaine and had not used it with defendant. Accordingly, the probative value of any testimony by Johnson that the victim used crack cocaine at least thirteen months prior to the date of the offenses was minimal, even assuming the evidence was relevant. We disagree with the trial court's statement that any testimony by Johnson was completely irrelevant to the issue of the victim's credibility, but we hold that the testimony's minimal probative value was substantially outweighed by the risk of confusion of the issues, e.g., suggesting that the victim's past actions made her a "bad person." Under these circumstances, we cannot say that the trial court abused its discretion in refusing to allow Johnson's testimony.
Chris Fawer, who had been incarcerated for nineteen months, stated that he could testify as to "things" the victim "was doing" in 1995. Again, the trial court found testimony by this witness to be irrelevant. Fawer did not even state what "things" he knew the victim "was doing" in 1995. Even assuming he was referring to drug usage by the victim, it would necessarily have been at a point in time at least one year prior to the date of the alleged offenses. For the above reasons, the trial court did not abuse its discretion in refusing to admit Fawer's testimony.
Finally, defense counsel said he had a seventh witness whom he had been unable to locate since the witness had been recently released from prison. Defense counsel represented that this witness would testify to the same things as the others. Defense counsel did not know how *763 long this witness had been incarcerated. The
trial court ruled that this witness could not testify either. Considering the meager information presented concerning this witness, we certainly cannot say that the trial court abused its discretion in refusing to allow him to testify.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 7:
By this assignment of error, defendant claims that it was reversible error for the trial court to appoint defense counsel.
Defendant claims that the failure of the trial court to remove defense counsel during the proceedings for gross ineffectiveness was, in effect, a denial of defendant's right to counsel. A defendant's right to counsel is guaranteed by the 6th Amendment of the federal constitution and Article I, Sec. 13 of the Louisiana constitution. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867. However, defendant's remedy in a case where counsel's performance is poor is to allege ineffective assistance of counsel, which defendant has done in the instant case in Assignment of Error No. 10. We thus pretermit discussion of this issue.

ASSIGNMENT OF ERROR NO. 8:
By this assignment of error as listed in defendant's index of assignments of errors, defendant claims that the trial court erred in limiting his cross-examination of the State's key witnesses at trial. However, this assignment of error is not briefed. "Any specification or assignment of error not briefed is considered abandoned." State v. Anderson, 97-2587 pp. 9-10 (La.App. 4 Cir. 11/18/98), 728 So.2d 14, 20 (citing Rule 2-12.4, Uniform Rules Courts of Appeal and State v. Holmes, 95-2249 p. 15 (La.App. 4 Cir. 10/29/97), 701 So.2d 752, 760, writ denied, 98-0149 (La.6/26/98), 719 So.2d 490).
Accordingly, this assignment of error is considered abandoned.

ASSIGNMENT OF ERROR NO. 9
By this assignment of error, defendant claims the evidence is insufficient to support his conviction. Recently, in State v. Ash, 97-2061 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15, this court summarized the standard of review that applies when a defendant claims that the evidence produced to convict him was constitutionally insufficient:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989). When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proved such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a *764 rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Defendant was convicted of aggravated burglary, La. R.S. 14:60; aggravated rape, La. R.S. 14:42; and aggravated crime against nature, La. R.S. 14:89.1.
La. R.S. 14:60 defines aggravated burglary in pertinent part as:
[T]he unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
La. R.S. 14:42 defines aggravated rape, in pertinent part, as:
A. [A] rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
Rape is defined by La. R.S. 14:41(A) as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent."
La. R.S. 14:89.1 defines aggravated crime against nature in pertinent part as:
[C]rime against nature committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but such resistance is overcome by force;
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution;
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon[.]
La. R.S. 14:89(A) defines crime against nature in pertinent part as:
(1) The unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, 14:42.1 or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
The testimony of a rape victim alone is sufficient to establish the elements of the offense of aggravated rape. State v. Campbell, 97-0358 p. 11 (La.App. 4 Cir. 5/20/98), 715 So.2d 488, 494, writ denied, 98-2485 (La.2/12/99), 738 So.2d 564. A reviewing court is not called upon to decide whether it believes the witnesses, and credibility decisions by the jury should not be disturbed unless such findings are clearly contrary to the evidence. State v. Ash, supra.
The victim's testimony, that defendant was armed with a hammer when *765 she complied with his order to perform oral sex on him and when he had intercourse with her against her will, is sufficient to sustain the convictions for aggravated crime against nature and aggravated rape. The victim's testimony, that defendant broke into the residence while armed with the hammer and that he stated his need for a screwdriver, is sufficient to sustain the conviction for aggravated burglary, as it established that defendant entered a residence while armed with the intent of committing a theftat the minimum. Considering the totality of the evidence in the light most favorable to the State, a rational trier of fact, finding the victim's testimony credible and corroborated by the other witnesses, could have concluded that the elements of each offense were proved beyond a reasonable doubt.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 10:
In his next assignment of error, defendant claims that his counsel was ineffective. Generally, the issue of ineffective assistance of counsel is more properly addressed in an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted. State v. Smith, 97-2221 p. 14 (La.App. 4 Cir. 4/7/99), 734 So.2d 826, 834. Only if the record discloses sufficient evidence to rule on the merits of the claim does the interest of judicial economy justify consideration of the issues on appeal. Id. at 834-35.
The defendant's claim of ineffective assistance of counsel is to be assessed by the two-part test announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See State v. Fuller, 454 So.2d 119 (La. 1984). The defendant must show that counsel's performance was deficient and that this deficiency prejudiced him. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992). Counsel's performance is not ineffective unless it can be shown that he or she made errors so serious that he or she was not functioning as the "counsel" guaranteed to the defendant by the 6th Amendment of the federal constitution. Strickland, supra, at 686, 104 S.Ct. at 2064. That is, counsel's deficient performance will only be considered to have prejudiced the defendant if the defendant shows that the errors were so serious that he was deprived of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693, 104 S.Ct. at 2068.
Defendant cites a number of instances of alleged ineffective assistance of counsel. The record appears sufficient to address most of his claims.
1. Defendant claims that counsel failed to follow through on his motion and defendant's pro se motion attacking the constitutionality of La. C.E. art. 412. Because we have held that the statute was constitutional as applied to bar testimony by three witnesses who wished to testify as to the victim's prior sexual behavior, we must conclude that, even assuming a deficiency in defense counsel's performance as to this issue, defendant was not prejudiced thereby.
2. Defendant next claims that the decision to call defendant to the witness stand, considering his prior convictions, amounted to ineffective assistance of counsel. This court has previously recognized that, if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bordes, 98-0086 p. 8 (La.App. 4 Cir. 6/16/99), 738 So.2d 143 (quoting State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986)). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective *766 for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." Id. (quoting State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied sub nom. Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987)). Accordingly, counsel's strategic decision to call defendant to testify does not establish ineffective assistance of counsel, especially since the victim and defendant were the only two witnesses to the incident in question. That is, assuming the victim had fabricated the attack, the defendant was the only person who could inform the jury of the "correct" history of events.
4. Defendant next argues that counsel was ineffective in that he failed to call several witnesses who, he claims, had witnessed the victim in defendant's presence prior to the arrest, even though the victim had testified that she had never seen defendant before the incident. The record contains no evidence of these witnesses. However, insofar as such witnesses could have challenged the victim's credibility, we allow defendant's right to raise this issue in an application for post-conviction relief to be reserved.
5. Defendant next claims that trial counsel was ineffective for failing to object to Officer Jewel's testimony concerning defendant's inculpatory statements, as such statements were inadmissible. Because we have held that these statements were properly admitted, defendant was not prejudiced by counsel's failure to object, even assuming that failure constitutes a deficient performance.
6. Defendant next claims counsel's performance was deficient in that he failed to object to purported "victim impact" testimony by the victim's mother during the State's redirect examination of her in its rebuttal and during the State's closing argument, in which reference to the testimony was made. Defendant admits that defense counsel did object to the mother's testimony, but only on the ground that it was outside the scope of redirect examination, not on the ground that it was irrelevant and highly prejudicial. However, we have held that the mother's statement concerning the victim's emotional state after the attack was relevant in that it tended to show that the victim had not consented to intercourse with the defendant. We have also held that the statement concerning the impact upon the whole family was no more than harmless error. Thus, defendant was not prejudiced by counsel's performance on this point.
As to the prosecutor's comment during closing argument, the prosecutor was talking about the victim, and he stated "[T]here is something that is screaming silently about this incident. You almost heard from her mom." Assuming this was a reference to the mother's statement concerning her daughter's withdrawn behavior in the days following the attack, this was permissible. The statement and its context do not indicate that the State was referring to the mother's statement about the attack's effect on the family. This point is without merit.
7. Defendant's final claim is that counsel's performance was deficient because he failed to object to the trial court's unconstitutional jury instruction on reasonable doubt. Because we have held that the jury instruction was constitutional, defendant was not prejudiced by counsel's failure to object, since any objection would properly have been sustained.
In sum, we hold that, on the claims reviewed, defendant did not receive ineffective assistance of counsel. However, defendant's right to raise the issue of ineffective assistance of counsel is reserved with regard to counsel's failure to call those witnesses who would have testified that the victim had been observed with defendant prior to the night of 7 January 1997.

*767 ASSIGNMENT OF ERROR NO. 11:
By this assignment of error, defendant claims he was prejudiced by three incidents of prosecutorial misconduct.
1. Defendant cites the State's failure to provide adequate notice of its intent to use defendant's inculpatory statements at trial as required by La.C.Cr.P. art. 768. We have noted that defense counsel failed to object timely to the use of the statements at trial and, consequently, was barred from raising lack of notice as an assignment of error. Defendant cannot now raise this issue by disguising it as an assignment of error relating to prosecutorial misconduct.
2. Defendant next claims the State elicited improper victim impact testimony from the victim's mother. In essence, we have already addressed this issue. The testimony regarding the victim's behavior after the crime was relevant to the issue of consent, and thus there was no misconduct in eliciting it. As to the other statement, the prosecutor abided by the judge's decision to terminate the line of questioning concerning the "impact" of the incident on the victim's family. It was the victim's mother who spoke over the judge's ruling; the transcript evidences no improper behavior by the State. And to whatever extent, if any, that the State's questions prompted the witness to vent her feelings, we have held that the statement was no more than harmless error.
3. Finally, defendant claims that the prosecutor made improper, personal attacks on him during closing arguments. Defense counsel failed to object to any such improper comments. Accordingly, defendant is barred from raising this issue as an assignment of error, either directly or as an allegation of prosecutorial misconduct. La.C.Cr.P. art. 841(A); State v. Seals, supra.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 12:
In his last assignment of error, defendant argues that the cumulative effect of the errors in the instant case denied him a fair trial. Our review, however, indicates that there was only one error patent in the sentencing process and perhaps, as discussed under Assignment of Error No. 3, one harmless error regarding the one extraneous statement by the victim's mother. Being harmless, this one error certainly did not deprive defendant of a fair trial.
This assignment of error is also without merit. Therefore, we affirm defendant's convictions and sentence as a habitual offender on the aggravated burglary conviction. However, we vacate his sentences on the aggravated rape and aggravated crime against nature convictions and remand the case for resentencing.
Finally, as discussed under Assignment of Error No. 10, we preserve defendant's right to raise a claim of ineffective assistance of counsel in an application for post-conviction relief, while limiting it to the issue of counsel's alleged failed to present witnesses who had seen the victim with defendant prior to the crimes charged.
CONVICTIONS AFFIRMED; SENTENCES VACATED IN PART AND REMANDED FOR RESENTENCING.
NOTES
[1] At this point in the trial, the cassette recording of the 911 call was played for the jury. New Orleans Police Detective Joseph Goines III had previously identified the cassette.
[2] This "motion hearing" was an effort by defendant to call as witnesses seven inmates who would testify either to the victim's past sexual history or her character.
[3] "It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." 511 U.S. at 7, 114 S.Ct. at 1244.
[4] Defendant makes no argument on appeal as to the issue of whether this testimony was beyond the scope of re-direct examination.
[5] While counsel initially states that the error included the failure to address the motion to suppress the evidence, no argument is presented as to that claim. Accordingly, it will not be addressed.
[6] In our opinion, the testimony of these two witnesses was not only relevant but helpful to the defendant insofar as Dr. Moises stated that his examination of the victim was not inconsistent with an examination of someone who had engaged in consensual intercourse and insofar as Ms. Daniels indicated her inability to express an opinion on whether the intercourse was consensual.
[7] Footnote 1 in Vaughn stated: "Instances where prior sexual conduct could be relevant might exist, for example, where the victim has a history of false reporting of rapes or where the victim has placed her chastity at issue and the evidence is offered solely for impeachment purposes."