668 So.2d 454 (1996)
STATE of Louisiana
v.
David HOHN.
No. 95-K-2612.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1996.
*455 Harry F. Connick, District Attorney, William James Quinlan, Jr., Assistant District Attorney, New Orleans, for Relator.
Robert Glass, Glass & Reed, New Orleans, for Respondent.
Before BARRY, KLEES and WALTZER, JJ.
WALTZER, Judge.
The issue in this writ application is whether the trial court erred when it granted respondent's motion to suppress a confession.

PROCEDURAL BACKGROUND
The State charged the defendant via bill of information with a violation of La.R.S. 14:27/R.S. 40:966.1, relative to attempted possession with intent to distribute marijuana (count two of the bill of information # 375-379). In the same bill of information (count one), the State charged Darshan Ramjag and Abdool Adam with a violation of R.S. 40:966.1, relative to possession with intent to distribute marijuana. The trial court heard testimony on various motions to suppress confessions and evidence. The trial court granted the motion to suppress the confession as to the defendant David Hohn. No other rulings are at issue in this writ application.

FACTUAL BACKGROUND
On 28 January 1995, Special Agent Sidney Roberts of the United States Custom Service received a tip that the motor vessel (M/V) Mini Link, docked at the Southern Scrap facilities, had drugs concealed on board and that two crew members were attempting to off-load the drugs to an individual who may have arrived from the New York area. Agent Roberts, accompanied by other *456 agents, a vessel search team, and K-9 units, boarded the vessel. The initial search failed to result in the recovery of any contraband. After leaving the vessel, the officers saw Hohn sitting in a car in an adjacent parking area; the agents approached him and asked personal questions regarding where he was from and why he was there. At the same time, a crew member walking to the vessel was stopped; he told the agents that Hohn had given him a ride. Ultimately, from information obtained from the crew member, the agents detained Adam and Ramjag. Adam told the agents where the contraband was located on board the vessel. Based on this information, the agents seized marijuana and arrested Adam and Ramjag.
Prior to the arrest of Adam and Ramjag and the discovery of the marijuana, the agents had searched Hohn's motel room, with his consent. The search proved to be negative. A search of his car was likewise negative. The agents asked Hohn if he would make a statement; he refused and that fact was noted on a waiver of rights form at 6:33 p.m. Based on the inculpatory statement made by Adam, Hohn was arrested.
Adam, Ramjag and Hohn were transported to the Customs office where they were booked. According to the testimony of Agent Roberts, approximately one hour later, he was questioning Hohn about his background in Jamaica. Agent Roberts also stated that he "was seeking information during an investigation on the case" and questioned Hohn about other cases. Hohn admitted that he was the person who was supposed to pick up the marijuana. Prior to Hohn's having made this statement, but after Hohn and Agent Roberts had begun discussing the incident, Agent Roberts advised Hohn of his rights. Agent Roberts knew that Hohn had earlier refused to waive his right to counsel and to remain silent. After Hohn admitted that he was the person to whom the marijuana was being delivered, he refused to sign a waiver of his rights.
Hohn testified on 29 September 1995 that he had refused to speak to anyone without an attorney present. At the Customs office, after he had been fingerprinted and booked, he was taken to Agent Roberts' office. Agent Roberts questioned him about Jamaica and then asked if he was the person who was supposed to pick up the drugs. After Hohn admitted that he was, Agent Roberts asked him if he was willing to sign a statement and Hohn refused. At that point, a waiver of rights form timed at 8:55 p.m. was given to him. Hohn signed the top part of the form indicating that he had been informed of his rights and understood them. He did not sign the bottom part, which provided for a waiver.
Also testifying at the hearing on defendant's motion to suppress was Agent Bradley Mellon. Agent Mellon testified that he was the agent who executed the waiver of rights form with the defendant at 6:33 p.m. While Hohn and the agent were sitting in Hohn's car at the dock and after the consensual search of his motel room, Hohn refused to give up his right to counsel and his right to self-incrimination; therefore, Agent Mellon marked the "waiver" section of the form "refused".

DISCUSSION
The trial court granted the motion to suppress Hohn's statement of 8:55 p.m. The court found that the agents had violated their obligation to scrupulously honor the defendant's request of 6:33 p.m. not to waive an attorney, to have an attorney present, and to remain silent.
The general test for the admissibility of a statement was set forth by this court in State v. Bell, 613 So.2d 744, 746 (La.App. 4th Cir.1993):
The State has the burden of proving that a statement given by a defendant was freely and voluntarily given, not the product of threats, promises, coercion, intimidation, or physical abuse. R.S. 15:451; State v. Seward, 509 So.2d 413 (La.1987); State v. Brooks, 505 So.2d 714 (La.1987), cert. den. Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Daliet, 557 So.2d 283 (La.App. 4th Cir. 1990). To establish the admissibility of a statement made by an accused person in custodial interrogation, the State must prove that the accused had been advised of *457 his/her Miranda rights, and that he/she waived these rights prior to interrogation. The determination of a statement's admissibility is within a trial court's discretion, and it should not be disturbed unless it is not supported by the evidence. Brooks, supra; Daliet, supra.

See also State v. Davis, 92-1623 (La. 5/23/94), 637 So.2d 1012, cert. den., Davis v. Louisiana, ___ U.S. ___, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994); State v. McKinney, 93-1425 (La.App. 4th Cir. 5/17/94), 637 So.2d 1120.
In State v. Abadie, 612 So.2d 1, 4-5 (La. 1993), cert. den., Louisiana v. Abadie, ___ U.S. ___, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993), the Louisiana Supreme Court reviewed and discussed the defendant's right to counsel under Miranda and his right to have counsel present during questioning:

Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 1612-13, 16 L.Ed.2d 694 (1966), itself indicated that if a suspect indicates "in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." The Court's later cases did not abandon that view. In Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) the Court noted that Miranda had distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and had required that interrogation cease until an attorney was present if the individual stated that he wanted counsel. 423 U.S. at 104, n. 10, 96 S.Ct. at 326, n. 10; see also Id. at 109-111, 96 S.Ct. at 329-330 (White, J., concurring). In Fare v. Michael C., 442 U.S. 707, 719, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979), the court referred to Miranda's "rigid rule that an accused's request for an attorney is per se an invocation of his Fifth Amendment rights, requiring that all interrogation cease." Rhode Island v. Innis, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), a case in which a suspect in custody had invoked his Miranda right to counsel, again referred to the "undisputed right" under Miranda to remain silent and to be free of interrogation "until he had consulted with a lawyer."

Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) reconfirmed these views and, to lend them substance, held that, when an accused prior to or during interrogation asks for counsel, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated, custodial interrogation even if he has been advised of his rights; and that such an accused is not subject to further interrogation by the authorities until counsel is present, unless the accused himself initiates further communication, exchanges, or conversations with the police. Recently, in Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), the Court confirmed that the Edwards rule bars police-initiated interrogation unless the accused has counsel with him at the time of the questioning. "Whatever the ambiguities of our earlier cases on this point, we now hold that when counsel is requested, interrogation must cease; and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." Id. 498 U.S. at 153-154, 111 S.Ct. at 491. The Edwards rule, moreover, is not offense-specific: once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present. McNeil v. Wisconsin, 501 U.S. 171, 176-177, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991), citing Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).
Therefore, once a suspect asserts his Miranda right to counsel, not only must the current interrogation cease, but he may not be approached in connection with any further criminal investigation until his counsel is present. McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). And if the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence *458 at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards. Id.

* * * * * *

Miranda emphatically declared that "if the individual indicates in any manner at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease" and that if he "states that he wants an attorney, the interrogation must cease until an attorney is present." Miranda, supra 384 U.S. at 473-74, 86 S.Ct. at 1627-28. The request need not be formal or direct, or for a particular attorney, but is sufficiently conveyed by even an unsuccessful attempt to reach a lawyer, United States v. DeLeon, 412 F.Supp. 89 (D.V.I.1976), State v. Slobodian, 57 N.J. 18, 268 A.2d 849 (1970), United States v. Porter, 764 F.2d 1 (1st Cir.1985), Hendrickson v. State, 285 Ark. 462, 688 S.W.2d 295 (1985), or an inquiry whether the police could recommend a lawyer. 1 LaFave & Israel, Criminal Procedure Sec. 6.9 p. 532 (1984). Indeed, courts must give broad rather than a narrow interpretation to a suspect's request for counsel. Michigan v. Jackson, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986).
The trial court suppressed the statement based specifically on State v. Abadie, supra and found that the officers had failed to honor the defendant's request to remain silent and have counsel present.
Relator does agree that once a defendant has requested counsel, questioning by the police must stop. However, Relator argues that the defendant never asked for counsel, hence the proper analysis is that found in Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) and its progeny. Specifically, Relator cites our decision in State v. Baker, 582 So.2d 1320 (La. App. 4th Cir.1991), writ denied 590 So.2d 1197 (La.1992), cert. den. 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992):
Once a defendant invokes his constitutional right to silence, the validity of any subsequent waiver depends upon the "scrupulous honoring" of the right by the police. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); State v. Brooks, 505 So.2d 714 (La.1987), cert. den., 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Whether defendant's right to silence has been "scrupulously honored" depends upon the totality of the circumstances, including who initiated the further questioning; the time delay between the original request and subsequent questioning; whether Miranda warnings were given before each interrogation; whether a waiver of rights form was signed; and whether the police exerted pressure on the defendant between the time he invoked his right to silence and the subsequent interrogation. State v. Brooks, supra.
582 So.2d at 1328-1329.
In support of its argument, Relator suggests that a "close examination" of the transcript will show that the defendant never "affirmatively" requested an attorney. Relator is correct that nowhere in the transcript does a witness say that the defendant requested an attorney. However, the defendant testified that he refused to speak to anyone without an attorney present. Agent Mellon, who noted the defendant's refusal to give a statement at 6:33 p.m., agreed that he wrote refused on the form "because Mr. Hohn refused to give up his right to counsel." Agent Roberts testified that he was aware that the defendant "had refused to waive his right to counsel." The form itself under the "Statements of Rights" includes language which informed the defendant that he had "the right to talk to a lawyer for advice before we question you and to have him with you during questioning." The portion of the form providing for a waiver of rights states "I do not want a lawyer at this time." Given this testimony and the language in the form, it does not appear that the trial court was manifestly erroneous in making the factual finding that Hohn had invoked his right to counsel during questioning.
However, even if Hohn did not request counsel, he clearly refused to waive his right to remain silent and to have counsel present during questioning. Under the Michigan v. Mosley standard, the trial court's finding that the agents failed scrupulously *459 to honor this request is also not manifestly erroneous. The police, not the defendant, initiated the further questioning. The time delay between the original refusal to waive his rights and the subsequent questioning was relatively brief. Agent Roberts testified that he did not advise the defendant of his rights before initiating the questioning in his office, although he did advise him of his rights when they began discussing the case. Finally, an acknowledgement of his rights was signed by the defendant but the waiver was not signed, and the form itself was not presented to the defendant until after his inculpatory statement had been made. There is no evidence that the police exerted pressure on the defendant.

CONCLUSION
The trial judge heard the witnesses and had the opportunity to observe their demeanor on the witness stand. His decision, when not clearly wrong, to suppress Hohn's statement is entitled to deference.
WRIT GRANTED. TRIAL COURT'S RULING AFFIRMED.