769 So.2d 131 (2000)
STATE of Louisiana
v.
Floyd COLDMAN.
No. 99-KA-2216.
Court of Appeal of Louisiana, Fourth Circuit.
August 30, 2000.
*132 Harry F. Connick, District Attorney, Nicole Brasseaux Barron, Assistant District Attorney, New Orleans, Louisiana, for Plaintiff-Appellee State of Louisiana.
Sherry Watters, Louisiana Appellate Project, Dwight Doskey, Dwight Doskey, P.L.C., New Orleans, Louisiana, for Defendant-Appellant Floyd Coldman.
Court composed of Chief Judge ROBERT J. KLEES, Judge JOAN BERNARD ARMSTRONG and Judge MICHAEL E. KIRBY.
KLEES, Chief Judge.
On July 31, 1997, the appellant was indicted for the second degree murder of Floyd Jackson. At his arraignment on September 18th he pled not guilty. After conducting several hearings, the trial court denied the appellant's motion to suppress the evidence on May 22, 1998, and his motion to suppress the statement on May 28th. The appellant sought writs from the ruling on the denial of the suppression of the statement, and in an unpublished decision this court denied writs, finding the trial court did not abuse its discretion by so ruling. State v. Coldman, 98-1640 (La. App. 4 Cir. 8/3/98), unpub. The Supreme Court also denied writs. State v. Coldman, 98-2257 (La.9/16/98), 724 So.2d 744. The appellant waived his right to trial by jury, and the trial was held on October 13, 1998. At the conclusion of the trial, the court found the appellant guilty as charged. The appellant requested immediate sentencing. The court sentenced the appellant to life imprisonment without benefit of parole, probation, or suspension of sentence. This appeal followed.

*133 FACTS

In the early morning hours of June 2, 1996, police officers were called to 3306 Behrman Highway to investigate the murder of Floyd Jackson. Jackson had been shot twice, and emergency personnel transported him to Charity Hospital where he later died. His autopsy showed he died of two gunshot wounds. The first bullet entered his left chest, went through his heart and right lung, exited his chest, and entered his right arm, where it lodged. The other bullet entered and exited his right forearm, entered and exited his right thigh, and then entered and exited his abdomen. Although the bullet from the latter wound was lost, the bullet from the former wound was recovered from his arm. In addition to his gunshot wounds, Jackson also had several deep lacerations on each side of his head, four on the left side near his ear, and seven on the right side. These lacerations caused no damage to the skull or brain. The coroner testified these lacerations were consistent with having been made during a pistol-whipping with a gun handle. Plastic pieces of a gun handle were found at the murder scene. Jackson had a .03 alcohol level, and there were traces of marijuana in his urine. He also had a half-inch cut on the bottom of his left foot.
On the same date, Jefferson Parish deputies were investigating the murder of Mark Carter, a friend of Jackson. Carter sustained multiple gunshot wounds, and four bullets were recovered during his autopsy. These bullets were compared with the bullet retrieved during Jackson's autopsy, and it was determined that they were fired from the same gun, a .38 caliber gun. Although no murder weapon was recovered, one firearm identification expert testified that the type of bullets used and the markings on them were consistent with having been fired from a Rhome gun, which has plastic ribs on its grip.
Jefferson Parish deputies investigating Carter's murder developed the defendant Floyd Coldman as a suspect. The deputies obtained an arrest warrant for Coldman and arrested him on June 9th after he left his girlfriend's Westbank home. The deputies advised him of his rights and transported him to a police station. Once there, the deputies again advised him of his rights, which he waived. He gave a first statement wherein he denied any involvement Carter's murder, indicating he was with his girlfriend at the time of the murder. However, after learning his girlfriend gave a statement wherein she refused to corroborate his alibi, Coldman gave a second statement wherein he confessed to shooting both Carter and Jackson.
In Coldman's second statement, which was played at trial, he stated that his residence had been burglarized some time prior to the shootings, and he learned that Carter and Jackson had committed the burglary. Coldman stated he also heard that Carter knew he suspected Carter and that Carter intended to kill him. Coldman stated he went to Carter's residence to talk to Carter about the burglary, and Carter met him outside. Carter went back inside his residence briefly and then came back outside. As they spoke about the burglary, Carter became angry and pulled a gun. By that time, Coldman had also pulled a gun. Coldman stated Carter then dropped his gun and started running. Coldman admitted he then picked up Carter's gun, a .38 caliber gun, and ran after Carter. Coldman told the deputies that he then shot Carter, emptying the six-shot gun, because he figured Carter would eventually kill him if he did not do so. Coldman then left in his car.
Coldman then stated that he knew where he could find Jackson and waited at that location until Jackson returned. Coldman stated he and Jackson argued about the burglary, and then he used Carter's gun to shoot Jackson, who he insisted had also threatened him. Coldman stated he had reloaded Carter's gun with ammunition he possessed. He admitted he also fired six shots at Jackson, and then took a *134 gun out of Jackson's pocket. Coldman stated he threw the murder weapon in a drainage canal on the Westbank and then went home.
Deputies searched the canal where Coldman indicated he had thrown the murder weapon, but they were unable to find the gun.
Mildred Jackson, Floyd Jackson's mother, testified at length about the former friendship between her son and Coldman. She also testified at length, without objection, concerning what she had heard about her son's and Carter's murder. She testified that when she saw her son at the hospital before he died, he identified Coldman as the man who shot him.

DISCUSSION

A. Errors Patent
A review of the record for errors patent reveals the court rendered its verdict and immediately noted the defendant's intent to appeal. The court then sentenced the appellant. Although an appeal may be taken only from a conviction and sentence, this court has held that it is not necessary to dismiss an appeal taken after conviction but before sentencing because "[d]ismissing the appeal would simply result in a delay of the appellate process and hinder defendant's right to appeal." State v. Martin, 483 So.2d 1223, 1225 (La.App. 4 Cir.1986). See also State v. Thompson, 98-0988 (La.App. 4 Cir. 1/26/00), 752 So.2d 293. This error is harmless.
There are no other errors patent.

B. Assignment of Error by Counsel
Through counsel, the appellant contends the trial court erred by denying his motion to suppress the confession. He raises two claims within this assignment: (1) the confession was the product of an illegal arrest; and (2) the State failed to prove the confession was voluntarily and freely given.
With respect to the first claim, the appellant was arrested pursuant to an arrest warrant. He argues that the affidavit for the warrant does not set forth probable cause for the magistrate to issue the arrest warrant. This issue was raised in the trial court, and the court rejected this argument. The appellant sought writs, and as noted above this court denied writs, finding the trial court did not abuse its discretion in denying the motion to suppress the confession. The Supreme Court also denied writs. The appellant reurges this argument on appeal. The appellant acknowledges that this court has already considered this claim.
As noted by this court in State v. Harris, 97-2269, p. 4 (La.App. 4 Cir. 1/20/99), 727 So.2d 670, 672:
Great deference should be accorded to an appellate court's pre-trial decision on admissibility unless it is apparent in light of the subsequent trial record that the decision was patently erroneous and produced an unjust result. State v. Carey, 609 So.2d 897, 898 (La.App. 4th Cir. 1992), citing State v. Humphrey, 412 So.2d 507 (La.1981) (on rehearing) and State v. Moran, 584 So.2d 318 (La.App. 4th Cir.), writ den. 585 So.2d 576 (La. 1991). The appellate court's prior decision of admissibility on a pre-trial writ does not absolutely preclude a different decision on appeal. State v. Carey, 609 So.2d at 898, citing State v. Johnson, 438 So.2d 1091 (La.1983).
Here, in the pretrial writ this court considered this portion of the appellant's assignment and found it to be without merit. The arresting officer's testimony at trial contained no additional information on this issue. In addition, the Staff memo in connection with the pretrial writ shows this court was aware of the multiple statements made by Tyris Ross, the man who was with Floyd Jackson when Jackson was murdered, when it considered the merits of the pretrial claim. Thus, there is nothing new for this court to review, and the pretrial ruling of this court should stand.
*135 Even looking at the merits of this claim, it has no merit. The appellant argues that the affidavit for the arrest warrant does not provide probable cause for its issuance. However, a reading of the affidavit shows that there was probable cause for the issuance of the warrant. The affidavit, which is one paragraph long, states that a known witness, who knew both Jackson and the appellant, heard the shots and saw the appellant standing over Jackson's body, striking Jackson with a gun. This language alone gave the magistrate probable cause to issue the arrest warrant.
The appellant argues that this affidavit is misleading, however, because the witness, Tyris Ross, did not initially identify him. Counsel attaches the four statements given by Ross, and in the first written statement, Ross insisted he did not get a good look at the man who shot Jackson.[1] However, in his second statement, Ross admitted he recognized the assailant, whom he identified as Floyd Coldman. He consistently identified the appellant in the remaining two statements, which differed from the second only in the amount of detail and in the relating of events which occurred prior to and after the murder, including the appellant's admission that he killed Jackson. In his second statement, wherein he first identified the appellant, Ross explained that he did not identify the shooter in his earlier statement because he feared for the safety of himself and his daughter. He also admitted in his second written statement that his younger brother, who was at the house at the time of the murder, also recognized the appellant as the man who shot Jackson. Contrary to the appellant's assertions, the statement in the arrest warrant affidavit that an eyewitness identified him was not a misrepresentation; in three out of four of the written statements he maintained that the appellant was the assailant. Nor did the fact that the affidavit listed him as Floyd "Coleman", rather than Coldman, render the warrant invalid. The affidavit lists the suspect's birthdate and address, and he does not argue these were not his birthdate and address.[2] Thus, his argument that there was no probable cause for the issuance of the warrant has no merit. Likewise, his argument that his confession should have been suppressed because it was a product of an illegal arrest is also without merit.
The appellant also argues that the confession should have been suppressed because the State failed to show it was freely and voluntarily given. La.R.S. 15:451 provides: "Before what [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." In State v. Jones, 97-2217, pp. 11-12 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 396[3], this court set forth the standard for determining the admissibility of a statement:
The State has the burden of proving the admissibility of an inculpatory statement at a motion to suppress hearing. La.Code Crim.Proc. art. 703(D); State v. Hohn, 95-2612, p. 3 (La.App. 4 Cir. 1/19/96), 668 So.2d 454, 456. Before a statement or confession can be admitted into evidence, it must be shown that it *136 was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements or promises. La.Rev.Stat. 15:451. State v. Sepulvado, 93-2692, p. 4 (La.4/8/96), 672 So.2d 158, 163; State v. Hohn, supra. "The testimony of police officers alone can be sufficient to prove the defendant's statements were freely and voluntarily given." State v. Gibson, 93-0305, p. 7 (La.App. 4 Cir. 10/13/94), 644 So.2d 1093, 1097. In determining the voluntariness of a statement, the district court must review the totality of the circumstances. State v. Sepulvado, supra. A district court's determination as to the admissibility of a statement is within the discretion of the district court; its decision will not be disturbed unless unsupported by the evidence. State v. Tart, 93-0772. p. 23 (La.2/9/96), 672 So.2d 116, 126; State v. Samuels, 94-1408, p. 7 (La.App. 4 Cir. 6/7/95), 657 So.2d 562, 566.
The State in this case adequately showed both at the suppression hearing and at trial that the appellant's confession was voluntarily and freely given. The officers advised the defendant of his Miranda rights at the time he was arrested. The officers transported him to the police station, where an officer again advised him of his rights. He read and signed a waiver form, and the officer who took the statement stated the appellant appeared to understand these rights. The officer testified she conducted a "preliminary interview" wherein he gave her personal background information and also told her what he was going to say in his statement. He then gave his first written statement, wherein he denied any involvement in the shootings, claiming he was with his girlfriend at the time. At the conclusion of this statement, he remained at the police station while officers took a statement from the appellant's girlfriend. When it became apparent the girlfriend would not corroborate his alibi, the appellant gave a second statement wherein he admitted shooting both Carter and Jackson. The officer who took both statements testified the appellant remained at the police station in the time between his two statements, and during this time he was not questioned but instead was given something to eat and drink and was granted bathroom privileges.
The appellant now argues that his confession was not voluntarily taken because the officers did not honor his refusal to make a statement, purportedly made in the police car while he was being transported to the police station. However, there is no evidence that the appellant exercised his right to remain silent. The officer testified that the appellant made no statements in the car because he was not questioned at that time. There was no indication, either at the suppression hearings or at trial, that the appellant ever invoked his right to remain silent. When the officer again informed the appellant of his rights at the police station, he waived his right to remain silent and gave his statement. There is nothing in the record before this court to show that either the first or the second statement was involuntarily given. Thus, the trial court did not err by denying the motion to suppress the confession. This assignment has no merit.

C. Pro Se Assignments of Error

I.
By his first pro se assignment of error, the appellant reiterates the assignment of error raised by counsel. With respect to the illegal arrest argument, he attaches the affidavit of the original arrest warrant issued in Jefferson Parish, which was the initial authority to arrest him, and he points to inconsistencies in the affidavit which he indicates invalidates that warrant. However, the validity of his confession is not ultimately dependent upon the validity of this warrant (the authenticity of which is uncertain because it is not contained in the record before this court). By the time the appellant gave his first statement, in which he denied involvement in *137 the murders, the Orleans Parish arrest warrant for Jackson's murder had been signed. The appellant was arrested at approximately 9:25 p.m. on the date he gave the statements. The Orleans Parish arrest warrant was signed at 10:24 p.m. The appellant gave his first statement a few minutes later, and then gave his second statement, wherein he confessed to the murders, at 12:43 a.m. As noted above, the arrest warrant issued in Orleans Parish was valid. Thus, even if the Jefferson Parish arrest warrant were lacking, by the time the appellant gave his statements, there was a valid warrant for his arrest. This assignment has no merit.

II.
By his second assignment of error, the appellant contends the indictment filed against him was invalid in that it failed to inform him adequately of the charge against him. Specifically, he argues that the bill is deficient because it does not denote with what subsection of La.R.S. 14:30.1 he was charged.
The indictment filed in this case follows the short form provided in La. C.Cr.P. art. 465(A)(32). The use of a short form as provided in art. 465 is constitutionally valid. See State v. Bourque, 622 So.2d 198 (La.1993); State v. Cager, 97-1877 (La. App. 4 Cir. 3/24/99), 732 So.2d 97[4]. In addition, the appellant was adequately informed of the charge against him because in response to his application for bill of particulars and motion for discovery and inspection, the State provided the police report and the coroner's report to the defense. This assignment has no merit.
Accordingly, the conviction and sentence of defendant, Floyd Coldman, are hereby affirmed.
AFFIRMED.
NOTES
[1] In all four statements, given within a few hours of each other, Ross explained that he and Jackson were leaving Ross' house when Ross turned back to put something back in the refrigerator. At that point, Ross heard gunshots, looked out a window, and saw the assailant standing over Jackson, beating Jackson with the gun.
[2] Counsel also makes argument concerning a mistake in the search warrant affidavit wherein the affiant states that the residence to be searched belonged to Floyd Jackson, not Floyd Coldman. However, because this error occurred in the search warrant affidavit, not the arrest warrant affidavit, it has no bearing in this assignment.
[3] Writ den. 99-1702 (La.11/5/99), 751 So.2d 234.
[4] Writ den. 99-1161 (La.10/1/99), 748 So.2d 433.