h CANNIZZARO, Judge.
On September 30, 1999, the defendant, Lawrence Robertson, along with three co-defendants, was indicted for two counts of first degree murder during a crime, violations of La. R.S. 14:30. The defendant pled not guilty. Motion hearings were held on February 3, 2001, July 6, 2001, January 3 and 8, 2002, March 6, 2002, April 10, 2002, and October 23, 2002. On November 22, 2002, the trial court granted the defendant’s motion to suppress the statements he had made to the police during a custodial interrogation on July 28, 1999. On the application of the State of Louisiana, we now grant this writ to review the correctness of the trial court’s judgment.
APPLICABLE LAW
The trial court’s factual findings during a hearing to suppress evidence are entitled to great weight and should not be disturbed unless they are clearly erroneous. State v. Casey, 1999-0023 (La.1/26/00), 775 So.2d 1022, 1029; State v. Clark, 446 So.2d 293, 297 (La.1984). In State v. Sylvester, 2000-1522, p. 2 (La.App. 4 Cir. 12/11/02), 834 So.2d 1184, 1186, this Court discussed the State’s burden at a motion to suppress a statement hearing:
The State has the burden of proving the admissibility of a purported statement at a motion to suppress hearing. La.C.Cr.P. art. 703(D); State v. Hohn, 95-2612, p. 3 (La.App. 4 Cir. 1/19/96), 668 So.2d 454, 456. Before a statement or confession can be admitted into evidence, it must be shown that it was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451. State v. Sepulvado, 93-2692, p. 4 (La.4/8/96), 672 So.2d 158, 163; State v. Hohn. ... In determining the voluntariness of a statement, the trial court must review the totality of the circumstances. State v. Sepulvado; State v. Dunn, 94-776, p. 15 (La.App. 5 Cir. 2/15/95), 651 So.2d 1378, 1387. A trial court’s determination as to the admissibility of a statement is within the discretion of the trial court and its decision will not be disturbed unless unsupported by the evidence. State v. Tart, 93-0772, p. 23 (La.2/9/96), 672 So.2d 116, 126; State v. Samuels, 94-1408, p. 7 (La.App. 4 Cir. 6/7/95), 657 So.2d 562, 566.
DISCUSSION
The trial court heard testimony from Sergeant James Bates[1] that the de *674 fendant had been advised of his rights,[2] was not coerced or threatened, and made the statement freely. The defendant, who claimed that he told the arresting officers (who had struck him repeatedly) that he had nothing to say and that he wanted to speak to an attorney, testified that he was taken to the Seventh District Police Station where Sgt. Bates and other officers questioned him, threatened him, and offered him a deal if he cooperated. Detective Kevin Guillot, who was called in rebuttal, testified that he apprehended the defendant on an outstanding warrant after chasing him in |3the Desire Housing Project and finding him hiding in some bushes. The detective stated that he advised the defendant of his rights, but denied that the defendant said that he had nothing to say and that he asked for an attorney. Detective Guillot said that the defendant apparently indicated that he wanted to talk to the investigating officer or to make a statement; therefore, he was taken to the Seventh District Station instead of the lockup.
In its per curiam order and reasons regarding the motions to suppress statements, the trial court factually concluded that Robertson was apprehended and advised of his rights after running from the officers and hiding under some bushes in the Desire Housing Project. The court found that Robertson told the arresting officers that he did not have anything to say and requested a lawyer; however, he was taken to the Seventh District to be interrogated by Sgt. Bates. The interrogating officers initiated the conversation about the murder without advising the defendant of his rights. When the defendant refused to talk about the case, Sgt. Bates became angry. The court found that Sgt. Bates threatened the defendant with harm to his family (by threatening to provide the victim’s family with the address of Robertson and his family) and the death penalty if he did not cooperate. The court concluded that Sgt. Bates promised the defendant leniency if he did cooperate. Robertson was also told that the officers would write up the report as if he had cooperated, whether he did or not. The officers were yelling in Robertson’s face for about an hour, and then Robertson’s “will was overborne and he unknowingly and involuntarily agreed to waive his rights and give a statement.” (Per curiam p. 3). The officers then backed away, and Sgt. Bates took out a rights of arrestee form and reviewed it with the defendant, who then agreed to give a taped statement.
|4The trial court provided three reasons for suppressing Robertson’s statement: 1) the State had not met its burden of proving that the statement was free and voluntary; 2) the defendant’s affirmative assertion of his right to remain silent and to talk to an attorney when he was initially arrested was not honored by the officers; and, 3) even if there had been no such violation of the defendant’s rights, the waiver was not valid because it was not voluntary, but the product of fear, duress, and intimidation. The court stated:
The Court stresses its assessment of the evidence remains even if all of the testimony and evidence regarding the Coleman and Jefferson interrogations is *675 removed.[3] The Court emphasizes that its factual finding in this regard is based not only on Sgt. Bates’ answers, which frequently were evasive, non-responsive or simply made no sense, but also on the Court’s observations of Sgt. Bates’ demeanor — his tone of voice, body language, and facial expressions — while testifying. The Court’s assessment of Sgt. Bates’ credibility, after watching as well as listening to Sgt. Bates, is that he was not a believable witness and his testimony cannot be credited.
(Per curiam p. 18) (footnote added). The trial court explained that he had the opportunity to observe Sgt. Bates during hearings on at least five different dates over more than a year; therefore, it could not be a case of the sergeant “having a bad day.”
The trial court emphasized that he did not believe Sgt. Bates. There were discrepancies and problems relating to the sergeant’s testimony and the documentation. The court was not persuaded by Detective Guillot’s testimony wherein he denied that the defendant did not want to say anything and that he wanted an attorney. The court made a credibility determination Rafter observing the witnesses, especially Sgt. Bates. The trial court’s factual findings are entitled to great weight. The trial court did not abuse his discretion by suppressing Robertson’s statement.
CONCLUSION
Accordingly, the relief requested by the State in its writ application is denied.
WRIT APPLICATION GRANTED; RELIEF DENIED.

. The transcripts from the motion hearings refer to Sgt. Bates as "Fred Bates.”

. At the January 8, 2002 hearing Sgt. Bates was not sure whether he or Detective Byron Adams had read Robertson his rights; at the July 6, 2001 hearing Sgt. Bates claimed that Detective Adams had handled the reading of the rights. The defendant's transcribed statement and Sgt. Bates' supplemental report face sheet indicated that Detective Adams read the defendant his rights; however, the waiver of rights form was signed only by Sgt. Bates and indicated that no other officers were present (explained by Sgt. Bates as an omission).

. In Orleans Parish Criminal District Court case number 405-506 H, Charles Coleman, Harold Jefferson and Kendrick Bartholomew were charged by indictment with first degree murder for the death of Antoine Taylor. In connection with that case, Sgt. Bates interrogated Charles Coleman and Harold Jefferson. At the October 23, 2002 motion hearing in Robertson’s case, the trial court noted that Sgt. Bates had failed to provide the defense in the Antoine Taylor murder case with the taped statements made by the defendants during their police interrogation. In view of Sgt. Bates' conduct in the Antoine Taylor case, the trial court questioned his veracity, stating, "With all respect to Mr. Bates — and this is for the record — I don’t give him that much credence. I do not.”