BYRNES, Judge.
In response to the mandate from the Louisiana Supreme Court on remand of this case, we have reviewed the case in greater depth to be certain that we have not overlooked anything that the Supreme Court would have expected us to consider and evaluate. In doing so we have found additional legal authority in support of the position that the defendant’s statement and evidence are admissible.
The defendant is charged in separate cases with possession of a dangerous weapon while in possession of crack cocaine in violation of La. R.S. 14:95, and with possession of marijuana in violation of La. R.S. 40:966(D)(1). After a consolidated motions hearing, the trial court granted the motions to suppress on November 25, 1996, and the State’s writ application followed, requesting a review of the trial court’s ruling.
In January 1996, Trooper John Schmidt was working with the United States Secret Service on a cellular telephone fraud investigation, which included the issuance of a Federal arrest warrant for James Nguyen. On January 16, 1996, Trooper Schmidt, another trooper, and four Secret Service agents went to a one bedroom apartment in New Orleans East to arrest James. After arresting him, the officers obtained his consent to search the apartment. While the consent to search form was being obtained, the officers were on a small balcony outside the apartment door. Trooper Sehmidt could see the defendant through the open door. He observed the defendant walk down a small hallway toward the rear of the apartment where he disap *67 peared from sight. When the officers first entered the apartment, the defendant was in the bedroom. The occupants, the defendant Tony Nguyen, together with the wife of James Nguyen and her infant child, were asked to go into the living room to facilitate the search.
In the course of the search, Trooper Schmidt found what appeared to be marijuana. The trooper asked the occupants of the apartment, “What is this?” The defendant responded that it was his and that it was marijuana. After Trooper Schmidt submitted the marijuana to the Crime Lab, the test was positive, and the trooper obtained an arrest warrant for the defendant.
On May 20, 1996, Detective John Fitzpatrick and Sergeant Warren Keller reviewed photographs of wanted subjects. That evening, they observed an Asian male and two black males engaged in an apparent transaction on Alsace Street. They recognized the Asian male as the defendant Tony Nguyen. They conducted an investigatory stop and arrested the defendant after identifying him as Tony Nguyen. A pat down of the defendant disclosed a .25 caliber semiautomatic handgun containing seven cartridges, and a further search of his clothing revealed a small plastic bag containing eight individually wrapped pieces of crack cocaine.
At the hearing Trooper Schmidt explained that: “The marijuana that appeared to be marijuana” was found in the bathroom. He stated that because it was not packaged in plastic bags and cigarette rolling papers, he was not sure |3that it was marijuana. He related that an attempt had been made to flush the marijuana down a toilet. Some of it was floating in the bowl, and some had fallen on the vanity. He also found two hand-rolled “cigars” in a trash can in the bathroom. One had been partially burned.
Trooper Schmidt testified that prior to presenting the suspected marijuana to the three adults sitting in the living room, he did not advise them of their Miranda rights. He also commented that he assumed that one of the three adults was the possessor of the marijuana.
On November 25, 1996, in granting the defendant’s motion, the. trial court stated:
The Court grants the motion to suppress, finding that the officer was obligated, under existing jurisprudence, to have notified Mr. Nguyen via the Miranda warnings, finds [sic] that any actions that followed were tainted by this initial illegality, finding that the so-call “fruit of the poisonous tree” doctrine applies.
The State contends that the Miranda warnings were not required because the defendant was not a focus of the investigation at James Nguyen’s apartment until the defendant made the statement regarding the marijuana.
Miranda warnings are required to be given whenever a citizén is deprived of his liberty in a significant way or was not free to go as he pleases. State v. Thompson, 399 So.2d 1161, 1165 (La.1981). In that, case the Louisiana Supreme Court found that an objective test to determine whether there was a significant detention included the following factors:
(1) whether the police officer had reasonable cause under C.Cr.P. 213(3) to arrest the interrogee without a warrant; (2) the focus of the investigation, on the interro-gee; (3) the intent of the police officer, determined subjectively; (4) the belief of the interrogee that he was being detained, determined objectively.
Id. at 1165.
In State v. Roach, 322 So.2d 222 (La.1975), the Supreme Court stated that a court must employ an objective test to determine the necessity for Miranda warnings. The court stated:
An examination of the record normally discloses four factors that are particularly helpful in this task: (1) whether, prior to interrogation, probable cause existed to arrest the accused; (2) statements or actions by the police indicating an intention to hold or restrain him; (3) statements or actions by the accused indicating his reasonable belief that he is in custody and (4) the extent to which the investigation has focused on the accused.
Id. at 227.
*68 In State v. Decuir, 599 So.2d 358 (La.App. 3 Cir.1992), writ denied, 605 So.2d 1095 (La.1992), an officer had a search warrant to search the Deeuirs’ home. At the home, the officer informed Mr. Decuir that he had a search warrant and asked Mr. Decuir if he had any illegal drugs in the residence. De-cuir said he did and led the officer into the bedroom where he showed the officer an ashtray containing marijuana and two “joints.” Decuir was then arrested and given his Miranda, rights. The appellate court found that the investigation had begun to focus on the defendant when the officer asked him if he had any drugs in the residence. However, the court found that there was no evidence of statements or actions by the officers or the defendant which indicated that the defendant was in custody or under significant restraint so that the drugs and the defendant’s statement were admissible at trial.
In State v. Watkins, 526 So.2d 357 (La.App. 4 Cir.1988), the officers had a search warrant and ordered the occupants into one room, read them an incomplete version of the Miranda warnings, and then asked them if they had any valuables, guns, or drugs to declare. In that case there was evidence of actions by the officers which indicated that the defendant was under significant restraint when the occupants were read a version of the Miranda rights. This |scourt found that the Miranda warnings were misleading because the officer told the defendant that he need not make any statement at that time, which did not indicate to the defendant that he never had to make a statement if he chose not to. Therefore, the statement was inadmissible. In the present case, prior to his statements, the defendant Tony Nguyen was not given his Miranda warnings so that absence of the Miranda warnings at the time could be one indication that the defendant was not under significant restraint as set forth in Watkins, supra.
In State v. Menne, 380 So.2d 14 (La.1980), certiorari denied, Louisiana v. Menne, 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980), the officer requested the defendant to come to the police station without informing the defendant that he was under no legal obligation to comply. Two officers questioned the defendant in the police interrogation room for about an hour. The Louisiana Supreme Court found that the defendant was detained in a significant way so as to require that he should have been given his Miranda warnings where then the police questioned his credibility and indicated he was a primary suspect. The Supreme Court determined that Menne was led to believe that he was not at liberty to leave “at least from the time the officers informed him they did not believe his story because he had been the last person with the murder weapon before it was found in the victim’s car.” Id. at 18-19.
In State v. Thompson, 399 So.2d 1161 (La.1981), Dissenting Opinion, 400 So.2d 1080 (La.1981), Officer Hughes was approached by a complainant alleging that he was a victim of a battery committed by several persons. Two police officers and the victim went into the lobby of a small New Orleans motel. The three defendants were present. Officer Hughes noticed what appeared to be blood spatters on Thompson’s shirt. The defendant made an leinculpatory statement in response to questioning. The Louisiana Supreme Court stated:
[Officer] Hughes asked Thompson to identify himself and, in effect, to explain his apparent actions (the circumstance of apparent blood on Thompson’s shirt.) After that inquiry, Hughes did not further interrogate Thompson, did not decide to arrest Thompson, but instead, to issue him a municipal court summons ... after the conversation in the lobby.
Id. at 1165.
Further, the Supreme Court stated:
“... Any interview of a person suspected of a crime will have coercive aspects to it, simply by virtue of the fact that the police officer is part of the law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned suspect is the one whom the police suspect. Mi *69 randa warnings are required only when there has been such a restriction of a person’s freedom as to render him ‘in custody.’ It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.” [Citation omitted.] ...
Id. at 1166.
The Supreme Court concluded:
Under these circumstances, we hold that the stop or detention was not a significant detention mandating the constitutional advice. The circumstances do not indicate that Thompson was deprived of his freedom or was detained in any significant way.
Id. at 1167.
Thompson’s statements were admissible although he was not given his Miranda warnings.
In State v. Davis, 448 So.2d 645 (La.1984), hunters had placed a man under citizen’s arrest for shooting a deer. When an agent of the Louisiana ^Wildlife and Fisheries Commission arrived, he asked the group, “who shot the deer?” The Louisiana Supreme Court held that the agent had not pointed a finger of suspicion at anyone and was merely making a general preliminary investigation so that the defendant’s statement that he shot the deer was admissible. In the present case, the officer had not pointed a finger of suspicion at any one when he asked the general question, “what is this?”
In State v. Byrd, 568 So.2d 554 (La.1990), the police were executing a valid warrant to search a child psychiatrist’s premises for materials relating to child pornography. There were four children on the premises. The two younger children were interviewed or questioned to determine their knowledge of the pornography items in the house, and they led the authorities to several photographs of nude children, including photographs of themselves. They told of spankings and fondling incidents having occurred daily over a period of time. The appellate court found that the officers went beyond the lawful scope of the search warrant by interrogating the minor occupants on the premises to be searched for evidence of crimes having no nexus to the crime being investigated. The defendant maintained that the boys were unlawfully detained, and the detention should be deemed an unlawful seizure. Thereafter, on review, the Supreme Court reversed, noting that generally it is required that before any statements given by juveniles can be used, there must be an affirmative showing that the juvenile engaged in a meaningful consultation with an attorney or an informed parent, guardian or another adult interested in his welfare before he waived his right to counsel and the privilege against self-incrimination. State in the Interest of Dino, 359 So.2d 586 (La.1978), certiorari denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978). IsHowever, the Supreme Court did not extend the requirements of Dino to conversations with juveniles who might be victims of a crime. Apart from the issue of whether the defendant did not have standing to challenge the use of information gathered from third parties, the Louisiana Supreme Court stated:
The law enforcement officers in this case, executing-a lawfully issued warrant, were free to chat with and to question persons who were not suspects and who were on the premises of the search as to their knowledge of the whereabouts of any of the items enumerated in the warrant. Before doing so, the officers were required neither to Mirandize those who were not suspects or to obtain an additional warrant before initiating a conversation with them. Contrary to Byrd’s assertion, no adult was required to be present when the police questioned the boys; no right of theirs was violated and no right of his, either'personal or derivative, was violated.
Byrd, supra at 563.
In State v. Kimbrough, 94-2141 (La.App. 4 Cir. 4/24/96), 673 So.2d 1187, 1190, this court affirmed the denial of the defendant’s motion to suppress, stating:
... the record discloses that the officers first interviewed defendant concerning the altercation between him and Roberts. The officers were unaware of the burglary until after speaking with Roberts about the altercation. Defendant was not detained as a suspect when questioned. Any . “deten *70 tion” that occurred was to determine the facts and circumstances surrounding the altercation. Officer Odom testified that while he accompanied Roberts into the house to investigate the burglary, Officer Delery continued talking with defendant.
While it is arguable that defendant may have become a suspect when he was asked to display the soles of his shoes, there was no intent on the part of the officers to detain him since he was allowed to leave. It was not until after defendant left and other witnesses were interviewed, that defendant became a suspect. Thus, given the record before us, we cannot say that the statements made to Officers Odom and Delery or the display of the shoe soles, were done in a “custodial | environment” necessitating in the giving of Miranda rights....
In State v. Alford, 29,343 (La.App. 2 Cir. 5/9/97), 694 So.2d 1162, writ denied, 97-1844 (La.11/14/97), 703 So.2d 1292, the appellate court reversed the trial court’s ruling which granted the defendant’s motion to suppress. In that case the appellate court related:
... Detective McKenzie approached the Alfords and questioned them. Defendant gave two conflicting explanations of his actions, then admitted his ownership of the marijuana patch. After this admission, defendant was arrested and for the first time, advised of his rights under Miranda
* * * * * *
... On the fourth day of the surveillance, August 21, 1994, around 1:00 p.m., Det. McKenzie and Deputy Charles Thomas, who were hidden in the brush, heard someone coming through the woods. Det. McKenzie revealed his presence and identified himself to defendant and his wife and told them that he had been watching a marijuana patch. According to the officer, at this time, neither defendant nor his wife were suspects. Det. McKenzie testified that he confronted the Alfords to find out what they were doing in the area.
Id., 694 So.2d at 1163-1164.
The court stated:
The situation involved here is more analogous to a Terry stop than to a formal arrest. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the court held that a police officer who lacks probable cause but whose “observations lead him reasonably to suspect” that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to investigate the circumstances that provoke suspicion. The stop and inquiry must be reasonably related in scope to justification for the initiation. Terry, supra. Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer’s suspicions. The detainee, however, is not obliged to respond and unless the detainee’s answers provide probable cause to arrest, he must be released. Thus, Terry stops are not subject to the dictates of Miranda....
Id. at 1166.
The court stated:
Defendant was not arrested, restrained, handcuffed, coerced, threatened, intimidated, verbally abused or even detained for an extended period of time. Det. McKenzie testified that until defendant’s admission, he and his wife were free to leave the area at any time had they wanted to do so.
Clearly a crime was occurring and Det. McKenzie acted reasonably under the circumstances by approaching the Alfords and asking why they were in the area. Miranda warnings were not required and Alford’s response to this reasonable inquiry is admissible.
Id. at 1167.
The detective’s approach of the defendant and his wife to ask why they were in an area of a marijuana patch under surveillance did not render the defendant “in custody” so as to require Miranda warnings.
In State v. Foret, 96-281 (La.App. 5 Cir. 11/4/96), 685 So.2d 210, the appellate court found that spontaneous and voluntary statements not made as a result of police interrogation or compelling influence are admissible in absence of Miranda warnings, even if the *71 accused is in custody. In that ease the officer took three taped statements from the deceased’s wife with the first statement given on the night of the murder and two on subsequent occasions while interviewing the wife. Her statements were inconsistent. The officer stated that the wife, Mrs. Jones, was not a suspect on those occasions that she implicated the co-defendant, Ms. Foret, as the murderer.
Then on May 7, 1993 on the same night of the third interview, when Ms. Jones was at the investigation bureau, she was aware that her telephone conversation with Ms. Foret was recorded. Ms. Jones asked Ms. Foret why Inshe had killed Ms. Jones’ husband, and Ms. Foret responded, “I have no idea.... I guess I’m nuts.” Id., 685 So.2d at 214. Later during the conversation Ms. Foret stated that she was not at the house on the night of the murder and she had not seen Mrs. Jones in nine months.
Although Detective Wright, the case officer, testified that Ms. Jones did not become a suspect until three days later on May 10, 1993, “Lieutenant Don English, when asked whether both Jones and Foret were suspects at the time of the recorded telephone conversation [on May 7, 1993], stated: T don’t know — yes, I would say they were.’” Id., 685 So.2d at 220. Although it was suspicious that Ms. Jones gave inconsistent statements, the appellate court found that Jones did not implicate herself until after she became a suspect three days later on May 10, 1993 and was advised of her Miranda rights.' She was not a suspect and was not subject to a focused investigation prior to that. The appellate court upheld the trial court’s denial of the defendant’s motion to suppress, stating that:
“... following her telephone conversation with Foret, Jones left the police station. Thus we agree with the trial court that Jones was .not in a custodial situation or deprived of her freedom in any significant way so as to require an advisal of rights.... ”
Id., 685 So.2d at 222.
In the present case only James Nguyen was the focus of the investigation. The other two adults, including the defendant, Tony Nguyen, were not subject to a focused investigation. The officer did not direct his question just to Tony Nguyen. Before Tony Nguyen made his statement, the other subjects did not implicate Tony Nguyen, and he was free to leave when he answered the officer’s question and made his statement. A warrant for his arrest was not issued until later after the police received the report of the chemical analysis ofj^the marijuana. When the officer asked all the occupants at the same time what was the substance found, Tony Nguyen was not the focus of the investigation, was not in a custodial situation, and was not deprived of his freedom in any significant way so as to require an advisal of his Miranda rights.
In the present case the arrest warrant was for James Nguyen, and James Nguyen consented to the search of his apartment after he was arrested. It was normal procedure for the police to place the occupants of the residence in one room so as not to interfere with the search. There was no evidence of statements or actions by the officers indicating that the defendant was in custody when the officer asked the question, ‘What is this?” The defendant had not been detained for interrogation when the officer asked the question. Given the totality of circumstances, the Miranda warnings were not required before the defendant answered that it was marijuana and it belonged to him. The defendant’s statement and the resulting evidence are admissible.
Accordingly, the trial court’s judgment is reversed, the defendant’s motions to suppress the defendant’s statement, the marijuana, the handgun, and the crack cocaine are denied. The cases are remanded for further proceedings.

WRIT GRANTED; REVERSED & REMANDED.

JONES, J., dissents.
MURRAY, J., concurs with reasons.