hPLOTKIN, Judge.
Roy Gustavis was convicted of two counts of purse snatching and one count of the unauthorized use of a motor vehicle. He was sentenced to serve forty years as a multiple offender as to the first count of purse snatching, twenty years as to the second count of purse snatching, and ten years as to the unauthorized use of a motor vehicle conviction. Defendant appeals his conviction and sentence, asserting two assignments of error. We affirm for the reasons that follow.

STATEMENT OF THE CASE

On October 19, 1998, defendant was charged with two counts of purse snatching, a violation of La. R.S. 14:65.1, and one count of the unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4. At his arraignment on October 23, 1998 he pled not guilty. The trial court denied defendant’s motion to suppress the evidence on November 19, 1998 and denied his motion to suppress the identification on January 26, 1999. During trial, the court denied defendant’s motion to suppress statements.
On August 24, 1999, a six-person jury found defendant guilty as charged on each of the three counts. On September 21, 1999, the trial court sentenced | ^defendant to serve twenty years at hard labor on each of the purse snatching counts and to serve ten years at hard labor on the unauthorized use of a motor vehicle count. The State subsequently filed a multiple bill charging him as a fourth offender. Defendant filed a motion to reconsider sentence and a motion for appeal on December 3, 1999. The court denied the motion to reconsider and granted the motion for appeal. On February 25, 2000, after a hearing, the court found defendant to be a second offender. The court vacated the sentence as to count one and resentenced defendant to serve forty years at hard labor as a second offender.

STATEMENT OF THE FACTS

In the early morning hours of August 16, 1998, Elaine Smith was attending a party at a bar located at the corner of Milan and Magnolia Streets. While in the bar, Ms. Smith noticed defendant Roy Gustavis. At approximately 3:00 a.m., Ms. Smith and a friend left the bar to go home. As they were standing outside Ms. Smith’s car, another car drove up next to her. Ms. Smith recognized the driver as Gustavis, whom she did not know but whom she had seen in the bar. Gustavis reached out from the car he was driving, snatched Ms. Smith’s purse, and sped from the scene. Ms. Smith described the purse as having her name written on it. She stated that the purse contained a few coin purses holding change. She testified that she then reentered the bar and the police were called. Ms. Smith testified that a few days after the robbery she identified the defendant in a photographic lineup as the man who snatched her purse while driving by in a car. She identified in court her purse and her coin purse. She also positively identified Gustavis at trial as the man who took her purse.
^Officer Clinton Hajek testified that he spoke with Ms. Smith after the robbery and that she described the car which the robber drove as a gray, four-door car. Ms. Smith further told him the robber did not get her wallet because it fell out of the purse as he snatched it. Officer Hajek testified that Ms. Smith described the robber’s appearance and informed him she had seen the robber while she was in the bar.
Ms. Cassandra Wilson testified that at approximately 10:00 a.m. on August 16, *1244 1998, she was walking down Cadiz Street on her way to work. As she crossed the corner of Cadiz and LaSalle Streets, she noticed a black car stopped at the corner. When she crossed the street, the car turned the corner. She continued walking down Cadiz, and as she neared Liberty Street, she noticed the same car stopped just short of the corner. She testified that the driver, whom she identified as defendant Roy Gustavis, motioned for her to cross in front of his car. After she passed by the front of the car, Gustavis pulled the car forward, reached out, grabbed her purse and then sped away. Ms. Wilson described the purse as black and white plaid, containing her wallet, checkbook and keys. She testified that she contacted the police, and a few days later she viewed a photographic lineup from which she tentatively identified Gustavis as the robber. She positively identified him in court as the man who took her purse. She also identified in court her purse, checkbook, credit cards, and driver’s license.
Officer Kevin Collins testified that he interviewed Ms. Wilson and that she gave only a vague description of the robber. She described the car used in the robbery as a black, four-door Toyota.
Officer Russell Philibert testified that he was on patrol on August 20, 1998 at Lee Circle. He testified that a black, four-door Toyota Corolla entered the Ltraffic circle and almost hit his car. Officer Philibert stopped the car, which was being driven by Gustavis, and ran the license plate through the computer. The computer indicated that the car had been stolen in Mississippi. Officer Philibert testified he approached Gustavis and asked him for his driver’s license. Gustavis admitted he did not have one and when asked, he further replied that the car belonged to his sister “Revis Brown.” The officer arrested Gustavis but released his female passenger, who Gusta-vis indicated “did not have anything to do with this.” Officer Philibert testified that he had the car impounded. At the auto pound, he opened the trunk and found various purses and wallets, including one purse with the name “Elaine” on it.
Detective Jerry Kune testified that he conducted a follow-up investigation of the case. He testified he learned of the purses found inside the car in which Gustavis was stopped, and that these purses included the purse, checkbook, and identification taken from Ms. Wilson. He testified he showed a photographic lineup to Ms. Wilson, who tentatively identified both Gusta-vis’ picture as well as that of another man. Det. Kune described the other man as being from Shreveport and having no connection to New Orleans.
Ms. Reva Brown testified that on August 15, 1998, she took her 1994 black four-door Toyota Corolla to a full service station in Jackson, Mississippi, and left the keys in the car for the attendant. She testified that she went inside the station, and when she later exited, she noticed her car being driven from the station. Ms. Brown stated she did not see who had stolen her car. She further testified she did not know Gustavis and did not give him permission to use her car. She testified her car was recovered in New Orleans approximately one week later.

\ ¿ERRORS PATENT

A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NUMBER ONE

By his first assignment of error, appellant contends the trial court erred by denying his motion to suppress the statement. The statement to which he refers is his statement to the arresting officer that the car belonged to his sister “Revis Brown.” Appellant argues that the statement should not have been admitted be *1245 cause the officer failed to advise him of his Miranda rights prior to questioning him about the ownership of the car. He further argues that this error cannot be found to be harmless because without his admission that he knew the car belonged to Reva Brown, there was insufficient evidence to support his conviction for the unauthorized use of the car.
Although the State did not file its notice of intent to use this statement until just prior to the beginning of trial, the transcript of trial indicates the statement was contained in the police report given to the defense. Thus, the defense was put on notice that the statement was made. The admissibility of the statement was not determined prior to trial; therefore, the court held the suppression hearing during trial, out of the jury’s presence.
During the hearing, Officer Philibert testified he ran the Toyota’s license plate as a matter of course as he pulled over the car. He testified the computer’s alarm sounded, indicating the car has been stolen. He then called for backup as Gusta-vis began walking back to his car. Officer Philibert quickly exited his car “and just kind of basically went through a normal routine traffic stop.” He asked Gustavis for his driver’s license, to which Gustavis replied: “No”. He then asked |aGustavis: “Well, who does the car belong to?” Gus-tavis replied: “My sister, Revis Brown.” He then placed Gustavis under arrest. Officer Philibert admitted he did not advise Gustavis of his Miranda rights prior to questioning him. On cross-examination, he testified he knew the car was stolen before he exited his car, and he stated: “He was walking toward me, so I wanted to hurry up and get out of my car. As he was walking back to the car with this alarm going off and him walking to me, I wanted to hurry up and jump from the police car.”
At the conclusion of the hearing, the trial court found the statement to be admissible and denied defendant’s motion for mistrial. Officer Philibert’s testimony before the jury later in the trial tracked that of his testimony during the hearing. During this later testimony, Officer Philibert also stated that Gustavis said that the passenger in the car “had nothing to do with this.” At the conclusion of Officer Philibert’s testimony, defense counsel moved for a mistrial because this statement was not brought out during the suppression hearing, and it differed somewhat from the statement in the police report [“with this”, as opposed to “with him operating the vehicle”]. Although the trial court severely admonished the State for its failure to include this statement in its notice, the trial court denied the motion for mistrial based upon this statement. Appellant’s argument does not address itself to this statement, but rather is limited only to the statement that the car belonged to the victim, whom he identified as his sister.
La. R.S. 15:451 provides: “Before what [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” In State v. Jones, 97-2217 (La.App. 4 Cir, 2/24/99), 731 So.2d 389, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234, this Court set forth the standard for determining the admissibility of a statement:
The State has the burden of proving the admissibility of an inculpatory statement at a motion to suppress hearing. La.Code Crim. Proc. art. 703(D); State v. Hohn, 95-2612, p. 3 (La.App. 4 Cir. 1/19/96), 668 So.2d 454, 456. Before a statement or confession can be admitted into evidence, it must be shown that it was made freely and voluntarily and not *1246 under the influence of fear, duress, intimidation, menace, threats, inducements or promises. La.Rev.Stat. 15:451. State v. Sepulvado, 93-2692, p. 4 (La.4/8/96), 672 So.2d 158, 163; State v. Hohn, supra. “The testimony of police officers alone can be sufficient to prove the defendant’s statements were freely and voluntarily given.” State v. Gibson, 93-0305, p. 7 (La.App. 4 Cir. 10/13/94), 644 So.2d 1093, 1097. In determining the voluntariness of a statement, the district court must review the totality of the circumstances. State v. Sepulvado, supra. A district court’s determination as to the admissibility of a statement is within the discretion of the district court; its decision will not be disturbed unless unsupported by the evidence. State v. Tart, 93-0772. p. 23 (La.2/9/96), 672 So.2d 116, 126; State v. Samuels, 94-1408, p. 7 (La.App. 4 Cir. 6/7/95), 657 So.2d 562, 566.
Id. at pp. 11-12, 731 So.2d at 396.
In State v. Watson, 99-1448 (La.App. 4 Cir. 8/23/00), 774 So.2d 232, this Court stated:
The protections of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, (1966) are only applicable when a person is the subject of a custodial interrogation. State v. Pomeroy, 97-1258 (La.App. 5 Cir. 5/13/98), 713 So.2d 642. A suspect is “in custody” for Miranda purposes when placed under formal arrest or when a reasonable person in the suspect’s position would have understood the situation to constitute a restraint of freedom of movement of the degree associated with formal arrest. State v. Hammond, 97-1677 (La.App. 4 Cir. 12/30/97), 706 So.2d 530. Under La.C.Cr.P. 201, in order to constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him. An arrest occurs Lwhen the circumstances indicate intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293, 296 (La.1985); State v. Gibson, 97-1203 (La. App. 5 Cir. 3/25/98), 708 So.2d 1276.
Id. at p. 19, 774 So.2d at 242. In Watson, officers received a detailed tip that the defendant would be delivering drugs in a certain vehicle to a certain shopping center. The officers knew the defendant had two prior drug convictions. The officers set up a surveillance of the shopping center and saw the defendant drive up in a van similar to that indicated by the informant. The defendant walked to a pay phone, scanning the area as he did so. The officers surrounded the defendant and advised him he was under investigation for narcotics activities. The defendant agreed to cooperate and signed a consent to search form. The officers searched his van and found drugs. The officers arrested the defendant and advised him of his Miranda rights. At that point, the defendant informed the officers he had more drugs at his apartment, and he agreed to a search of the apartment. The officers searched the apartment and discovered more drugs. On appeal, the defendant argued that his inculpatory statements should have been suppressed because he was the object of the drug investigation from the time he was stopped, and the officers did not advise him of his Miranda rights until they had searched his van. This court rejected this claim, noting the initial questioning took place in a public place, and further noting that the statements in question were made after the drugs were found in the van and the defendant was arrested and advised of his rights.
In State v. Nguyen, 97-0020 (La.App. 4 Cir. 1/14/98), 707 So.2d 66, officers went to *1247 an apartment to arrest a suspect in a cellular telephone fraud investigation. After arresting the suspect at his apartment, the officers obtained the |9suspect’s consent to search the apartment. All of the occupants of the apartment were told to go into the living room during the search. In the course of the search, an officer found a bag of what appeared to be marijuana and asked the occupants of the apartment what it was. The defendant responded that it was his and that it was marijuana. The trial court granted the defendant’s motion to suppress because of the lack of Miranda warnings. This Court reversed and set out the following factors to aid in determining whether there was a significant detention requiring the giving of Miranda warnings:
(1) whether the police officer had reasonable cause under C.Cr.P. art. 213(3) to arrest the interrogee without a warrant; (2) the focus of the investigation on the interrogee; (3) the intent of the police officer, determined subjectively; (4) the belief of the interrogee that he was being detained, determined objectively.
97-0020 at p. 3, 707 So.2d at 67, citing State v. Thompson, 399 So.2d 1161, 1165 (La.1981). This Court found that Miranda warnings were not needed because the occupant of the apartment was the target of the investigation, and the defendant was not under investigation as to the marijuana until after he admitted the marijuana belonged to him.
In State v. Cowan, 99-2888 (La.6/16/00), 763 So.2d 583, in a per curiam decision, the Supreme Court stated that Article 215.1 did not preclude a police officer, who may lack reasonable suspicion, from engaging a motorist in conversation while investigating a routine traffic violation. The Court stated that the conversation, coupled with the subsequent alert by a drug dog on the closed and locked toolbox in the bed of the defendant’s truck, provided the police with probable cause to search for contraband, But the police were not obligated to end their investigation at that point and formally arrest the defendant before | ^determining the contents of the toolbox to confirm or discount the drug dog’s alert. The Court noted that the investigation had not yet passed its preliminary stages when the officers asked the defendant if he had a key to the toolbox and elicited the admission that he had the key but would not give it to them. The Court stated that the absence of Miranda warnings did not taint the defendant’s response. The Court further allowed, however, that even if the statement could be deemed to have been inadmissible because of the absence of Miranda warnings, the evidence seized from the toolbox would still have been admissible because the officers had probable cause to believe it contained contraband and exigent circumstances to open the toolbox without a warrant.
In the case at bar, at the time Officer Philibert questioned defendant as to who owned the car, he already knew that defendant was driving a stolen car. At that point, Officer Philibert had probable cause to arrest defendant for possession of a stolen vehicle or for unauthorized use of a motor vehicle. Officer Philibert had not yet arrested defendant, but defendant was definitely the target of his investigation, and it was unlikely the officer would have let him leave. As in Watson, defendant here was stopped in a public place; however, unlike in Watson, the officer asked the question in the absence of any Miranda warnings. Unlike the officers in Cowan, by the time Officer Phili-bert approached defendant he had called for backup, and he admitted that he hurried up and “jumped” from the police car to keep defendant from hearing the alert from the computer that the car was stolen. In addition, when defendant indicated he *1248 did not have a driver’s license, the officer had probable cause to arrest him for driving without a license. Thus, the arrest of defendant was virtually certain, and by the time the officer questioned defendant about the ownership of the car, the officer had probable cause to arrest Inhim for at least two violations of the law. Unlike in Cowan, here the officer would not have “inevitably discovered” that defendant would admit he knew the car belonged to the victim. As such, even though the officer had not formally placed defendant under arrest prior to asking him who owned the car, it appears the officer should have advised defendant of his Miranda rights prior to asking about the ownership of the car he knew was stolen. Thus, this statement should have been suppressed.
The erroneous admission of an inadmissible statement need not result in the reversal of a defendant’s conviction if the admission was harmless error. As noted in State v. Koon, 96-1208 (La.5/20/97), 704 So.2d 756:
The State argues that even if the statement should have been suppressed, any error in admitting the statement was harmless. Arizona v. Fulminante, 499 U.S. 279, 311, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (when reviewing the erroneous admission of an involuntary confession, the appellate court simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt). An error is harmless if it is unimportant in relation to the whole and the verdict rendered was surely unattributable to the error. State v. Seals, 93-0305, p. 12 (La.11/25/96), 684 So.2d 368, 377, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997) (citing State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364, cert. denied, 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996)).
Id. at p. 9, 704 So.2d at 763-64.
Defendant argues the error in admitting this evidence could not be harmless because without this statement, there was no evidence that he knew the car had been stolen. However, the crime for which defendant was convicted, unauthorized use of a motor vehicle, does not require that the vehicle be stolen. La. R.S. 14:68.4A defines this offense as: “the intentional taking or use of a motor vehicle l^which belongs to another, either without the other’s consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.” Defendant argues that it was reasonable to believe that he may have borrowed the car from someone else, whom he thought owned the car. However, this defense was not presented and no evidence of the phantom owner of the car was offered before the trial court.
Furthermore, the owner of the car testified she did not know defendant and had not given him permission to use the car. As such, the erroneous admission of this statement did not contribute to the verdict, and as such it constituted harmless error.
This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER TWO

By his second assignment, defendant contends the trial court erred by finding him to be a second offender. The State originally charged him as a fourth offender, based upon three prior convictions out of Mississippi. The court found the State met its burden as to only the most recent conviction. It found appellant to be a second offender, vacated the original sentence, and resentenced him on count one to serve forty years at hard labor as a *1249 second offender. Defendant now argues the trial court erred in finding him to be a second offender because the State did not adequately prove he was the person convicted in the prior case.
Initially, it must be determined whether this issue was preserved for review. At the multiple bill hearing, defense counsel objected to the use of the prior conviction for business burglary, but the basis of the objection during argument was that the guilty plea form did not contain defense counsel’s signature. He also |13argued that defendant’s signature on the plea form did not prove he knowingly waived his Boykin rights. Counsel did not object to the lack of proof of identity. As such, it appears this issue was not preserved for appeal. See State v. Chairs, 99-2908 (La.App. 4 Cir. 2/7/01), 780 So.2d 1088, 1095.
Even if the argument about the signature on the form concerning “what Off. Pichón testified about” can be construed as an objection to identity, the claim still has no merit. In discussing the burden the State has to prove a defendant is a multiple offender, this Court in Chairs stated:
La. R.S. 15:529.1(D)(l)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. The State must establish the prior felony and that the defendant is the same person convicted of that felony. State v. Neville, 96-0137, p. 7 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 538-39, writ denied 97-1637 (La.12/12/97), 704 So.2d 1180. There are various methods available to prove that the defendant is the same person convicted of the prior felony offense, such as testimony from witnesses, expert opinion as to a comparison of the defendant’s fingerprints with those of the person previously convicted, photographs contained in a duly authenticated record, or evidence of an identical driver’s license number, sex, race, and date of birth. State v. Henry, 96-1280, p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 326, writ denied, 99-2642 (La.3/24/00), 758 So.2d 143. The mere fact that the defendant and the person previously convicted have the same name does not constitute sufficient evidence of identity. Id.
Id. at p. 10, 780 So.2d at 1095.
Here, at the hearing the State presented the testimony of Chanda Pichón, qualified as an expert in the field of document examination and handwriting analysis. Ms. Pichón testified she compared a handwriting exemplar taken from defendant with the signature on the documents pertaining to this prior conviction, designated as State’s exhibit 2. Ms. Pichón testified that in her opinion the 114signature on the document involving this prior conviction and the exemplar were of “common authorship.” Although Ms. Pichón did not specify which document she was comparing to the exemplar, later in the hearing defense counsel referred to the document as the waiver form with defendant’s signature.
This document is not included in the record, and the only documents the district court sent to this Court in response to our request were S-4, S-5, and S-6; the document Ms. Pichón compared was included in S-2. However, defendant does not now contend that the signature was not his, nor does he argue that the court improperly qualified Ms. Pichón as an expert. Instead, he argues that the only documents found in the record pertain to the other prior convictions that did not form the basis of the multiple offender adjudication, and these documents do not adequately prove identity or that these prior charges resulted in convictions.
*1250 These documents may not adequately prove identity or an actual conviction. However, those prior convictions were not used in the adjudication. The documents contained in S-2, which are not in the record, formed the basis of the adjudication. Ms. Pichon’s testimony established defendant’s identity as to the prior conviction upon which the second offender adjudication was based. Thus, even if defense counsel’s argument can be construed as preserving this issue for appeal, this claim has no merit.

CONCLUSION

Accordingly, defendant’s convictions and sentences are affirmed.

AFFIRMED.

MURRAY, J., concurs in the result.